# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Adoption of: | No. 47697-5-II |
| K.M.T., a minor child, | |
| M.D.T., | |
| Appellant, | |
| v. | PUBLISHED OPINION |
| C.A.M. and E.L.M., | |
| Respondents. | |

MAXA, J. – MT and CM are the biological parents of KMT, born in March 2010. MT and CM had a short relationship that ended before CM learned she was pregnant. A few years later, CM married EM. In 2013, CM and EM filed a petition under chapter 26.33 RCW to terminate MT's parental rights to KMT and to permit EM to adopt KMT. The trial court entered orders terminating MT's parental rights and permitting EM to adopt KMT.

MT appeals the trial court's termination and adoption orders, arguing that the trial court violated his right to substantive due process because it terminated his parental rights without finding that (1) MT was unfit to parent KMT and (2) termination was necessary to prevent harm to KMT. First, we hold that the trial court erred in failing to make the required due process finding that MT was unfit to parent, which can be satisfied by compliance with the requirements

of RCW 26.33.120(1).  Specifically, the trial court failed to address under RCW 26.33.120(1) whether clear, cogent, and convincing evidence established that MT's failure to perform parental duties was "under circumstances showing a substantial lack of regard for his or her parental obligations."  Second, we hold that substantive due process does not require the trial court to find that the termination of a parent's rights under chapter 26.33 RCW must be necessary to prevent harm to a child, and therefore that the trial court did not err in failing to make this finding.[1]

We reverse the trial court's termination and adoption orders.  We remand for the trial court to address, consistent with this opinion and based on the existing record, whether under RCW 26.33.120(1) clear, cogent, and convincing evidence establishes that MT's failure to perform parental duties was under circumstances showing a substantial lack of regard for his or her parental obligations and for other proceedings.

## FACTS

*Background*

MT and CM dated for a short time in the spring of 2009.  MT was an active member of the United States Army and was stationed in Pierce County.

A few weeks after CM ended the relationship, she found out that she was pregnant.  CM informed MT of her pregnancy four days before he was deployed to Afghanistan.

*MT's Contact with CM and KMT*

MT was deployed to Afghanistan from July 2009 until July 2010.  MT's and CM's relationship was unfriendly during this time.  They argued over whether MT would have

---

[1] As discussed below, we also decline to consider, because MT did not object in the trial court, MT's argument that the trial court violated his procedural due process rights by not allowing him to appear by telephone for the first day of trial.

visitation or custody of KMT as well as over other topics. MT sent CM at least one social media message calling CM vulgar names.

In June 2010, CM filed a petition for a domestic violence protection order against MT. When MT returned to Washington from his deployment in July 2010, he was served with an ex parte restraining order preventing him from seeing CM and KMT. The restraining order was dismissed on July 16 after CM failed to appear at a court hearing.

After the restraining order was dismissed, MT met KMT for the first time. At trial, the parties disagreed about MT's contact with KMT. CM testified that MT saw KMT only three or four times. MT testified that he saw KMT every workday evening and on weekends from mid-July through mid-August.

In August 2010, the relationship between MT and CM deteriorated further after MT began dating another woman. CM cut off all contact with MT and refused to let him see KMT. MT has not had contact with KMT since that time.

In October 2010, the Army sent MT to Missouri for four months of training. In February 2011, MT was deployed to Germany until March 2014. During that time, he again deployed to Afghanistan in 2012.

CM received state assistance from the time KMT was born until March 2011. MT initially did not pay any child support. In August 2010, CM contacted MT's commanding officer and requested assistance in obtaining child support from MT. Subsequently, MT paid $1,500 in back child support. For the next several months, monthly $100 child support payments were deducted from MT's military pay.

CM obtained employment in March 2011 and discontinued state assistance. After that time, MT's child support no longer was removed from his military pay and CM stopped receiving $100 per month. MT did not undertake any additional efforts to make child support payments.

While he was in Germany, MT sent CM a $500 child support check as well as a $200 check for Christmas gifts for KMT, but both checks were returned. MT sent cards to KMT for her birthday, but they also were sent back to his address in Germany. MT attempted to reach CM through her best friend, as well as through multiple social media platforms, but CM blocked him from contacting her.

In October 2012, MT sent CM a letter informing her, "I told my lawyer to drop any pursuit of rights to our daughter, and I accept that if you don't feel that I should be in her life, then I will have to live with that." Report of Proceedings (RP) at 135. At the time, MT believed his planned 20-year military career would preclude him from having a real chance to be a part of KMT's life.

*CM and EM's Marriage*

Meanwhile, CM and EM began dating in March 2011, when KMT was one year old. They married in November 2011. In December 2011, CM and KMT moved to Illinois to be with EM. CM did not inform MT that she and KMT were leaving Washington. CM and KMT moved back to Washington in March 2013.

At the time of trial CM and EM had two children, ages two and three months, in addition to KMT.

No. 47697-5-II

*MT's Discharge from the Army*

In March 2014, MT was discharged from the Army pending the Veteran's Administration's (VA) decision on a medical disability. As a result of his service, MT suffered from post-traumatic stress disorder, a back injury, and a traumatic brain injury. MT moved in with his parents in Ohio because at that time he was receiving minimal retirement benefits and could not support himself. After four months, the VA rated him 100 percent disabled because of his injuries.

MT visited Washington for a month in August 2014 and attempted to see KMT, but he was unsuccessful in contacting CM or her mother. At no time from KMT's birth to the termination trial did MT take any legal action to obtain visitation rights or custody of KMT.

*Petition for Termination of Parental Rights/Adoption*

In May 2013, EM and CM filed a petition under chapter 26.33 RCW to terminate MT's parental rights regarding KMT and for EM to adopt KMT. Because MT was serving abroad, the petition was stayed under the Service Members' Civil Relief Act, chapter 38.42 RCW. MT was served in May 2014 after he returned from Germany. MT requested that the petition be denied. In July 2014, CM filed an ex parte petition for a restraining order preventing MT from contacting CM or KMT.[2]

*MT's Presence at Trial*

The termination trial was scheduled to begin on April 21, 2015. MT was not present. MT's attorney claimed that a technology issue had led to a misunderstanding about the trial date and stated that MT was still in Ohio.

_____

[2] The record does not indicate whether the trial court entered a restraining order.

MT's attorney informed the trial court that MT would be appearing by telephone. CM and EM objected to MT testifying by telephone. The trial court discussed case law regarding telephonic testimony and later stated that it was inclined to allow such testimony. MT's attorney then informed the trial court that MT would be able to fly to Washington the next day and be in court the following morning. The trial court decided to proceed with the first day of trial and then recess for a day to allow MT to be present for the second day of trial. The trial court did not address whether MT could appear by telephone for the first day of trial, and MT's attorney did not raise the issue.

CM and EM's attorney then began his opening statement. After making some preliminary statements he paused and asked the trial court whether MT needed to be on the telephone. The trial court responded, "No. It is a civil matter. He has no right to be here. It is one thing to allow him to testify. It [is] another thing to appear." RP at 21. MT's attorney did not object to or comment on this ruling. CM and EM's attorney continued with his opening statement and trial proceeded without MT's telephonic presence.

CM testified on the first day of trial and MT's attorney cross-examined her. But because MT was not present to inform her of what he might like her to ask, his attorney requested the right to recall CM for further cross-examination. CM and EM objected. The trial court ruled that MT could recall CM in his case in chief. The trial court did not determine whether or not MT could ask CM leading questions when she was recalled, stating that it would rule on any objections as they were made.

MT was present on the next day of trial. EM testified, and then CM and EM rested their case. MT was the only witness in his case in chief. MT's attorney did not recall CM as a

6

witness. CM and EM called CM as a rebuttal witness, and MT's attorney cross-examined her with MT present.

*Trial Court Ruling*

Following closing arguments, the trial court gave an oral ruling summarizing the evidence. The trial court made oral findings that MT had failed to perform his parental duties for years and concluded that it was in KMT's best interests to terminate MT's parental rights and proceed with the adoption. The trial court stated, "I do think this is an actually closer case than maybe either side believes." RP at 200-01. Later the trial court clarified, "Well, when I say close, I do mean, in part, it was close because of the clear, cogent, convincing standard. If it was just a preponderance of the evidence, it wouldn't have been so close." RP at 214.

The trial court issued the following written findings of fact:

2.7.1 [MT] has not seen the child since she was 3 months old (June or July 2010).
2.7.2 [MT] has not paid any child support since March 2011, except for two sporadic money orders that were not accepted by the mother. Support enforcement had been administratively stopped.
2.7.3 [MT] has failed to exercise his parental rights.
2.7.4 Child has been integrated in new family.
2.7.5 Child does not know him as the father.
2.7.6 Child has a half-sibling with mother.

Clerk's Papers (CP) at 47-48. Conclusion of law 3.2 stated:

[MT] has failed to carry out his parental obligations, and it is in the child's best interests to terminate the parent-child relationship. [MT] has withheld his consent for adoption contrary to the best interests of the child.

CP at 48. The trial court's order did not include a finding of fact or conclusion of law stating that MT's failure to carry out his parental obligations was under circumstances showing a substantial lack of regard for those obligations. And the trial court's order also did not expressly address MT's fitness as a parent.

7

Based on these findings of fact and conclusion of law, the trial court issued an order terminating the parent-child relationship of MT and KMT. The trial court issued separate findings of fact and conclusions of law regarding adoption and subsequently issued a decree of adoption granting EM's petition to adopt KMT.

MT appeals the termination and adoption orders.

ANALYSIS

A.     TERMINATION OF PARENTAL RIGHTS

MT argues that the termination order violated substantive due process because the trial court terminated his parental rights without making a finding that he was unfit to parent or a finding that termination was necessary to prevent harm to KMT. We agree with MT that the trial court violated his due process rights and RCW 26.33.120(1) by failing to make either an express or implied finding that MT's failure to perform parental duties was "under circumstances showing a substantial lack of regard for his . . . parental obligations," which was required under RCW 26.33.120(1) to demonstrate MT's unfitness to parent. However, we reject MT's argument that the trial court was required to find that termination was necessary to prevent harm to KMT.

Because the trial court failed to make a finding required by substantive due process and RCW 26.33.120(1), we reverse the trial court's termination and adoption orders. In the interest of justice, we remand for the trial court to address whether clear, cogent, and convincing evidence establishes that MT's failure to perform his parental duties was under circumstances showing a substantial lack of regard for his parental obligations.

1. Legal Principles

Washington's adoption statute allows a person seeking to adopt his or her spouse's child to petition for the termination of the other parent's parent-child relationship. RCW 26.33.100. Under RCW 26.33.120(1), the parent-child relationship may be terminated

> upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1). The threshold question under the statute is whether the parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." RCW 26.33.120(1); *In re H.J.P.*, 114 Wn.2d 522, 531, 789 P.2d 96 (1990). The trial court must resolve this issue before it can address the child's best interest. *H.J.P.*, 114 Wn.2d at 531.

However, constitutional principles also limit a trial court's ability to terminate a parent-child relationship. Parents have a fundamental liberty interest in the care, custody, and management of their children, which is protected by substantive due process under the Fourteenth Amendment to the United States Constitution. *In re Welfare of H.Q.*, 182 Wn. App. 541, 550-51, 330 P.3d 195 (2014). This interest includes preservation of the family unit. *In re Welfare of L.R.*, 180 Wn. App. 717, 723, 324 P.3d 737 (2014). Therefore, any state action that would terminate a parent-child relationship must satisfy due process. *See H.J.P.*, 114 Wn.2d at 526-27. We review substantive due process challenges de novo. *In re Welfare of A.G.*, 160 Wn. App. 841, 844, 248 P.3d 611 (2011).

Significantly, parents cannot lose their constitutionally protected interests simply because they have not been model parents. *H.Q.*, 182 Wn. App. at 551. " 'Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.' " *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

In *H.J.P.*, our Supreme Court noted that under *Santosky*, termination of a parent's parental rights violates due process unless there is a judicial determination of that parent's unfitness to raise his or her child. *H.J.P.*, 114 Wn.2d at 527-28. The court applied this rule to termination of parental rights and adoption under RCW 26.33.120(1). *Id.* at 528-31. Therefore, a trial court "must find parental unfitness on the part of the nonconsenting parent" in order to terminate that parent's parental rights under RCW 26.33.120(1). *Id.* at 531. The Supreme Court also has applied this parental unfitness rule to State-initiated termination of parental rights under RCW 13.34.180. *In re Welfare of A.B.*, 168 Wn.2d 908, 918-19, 232 P.3d 1104 (2010).

The court in *H.J.P.* did not impose a parental unfitness requirement in termination/adoption cases independent of the statutory language. Instead, the court indicated that compliance with the statutory requirements satisfied due process. *H.J.P.*, 114 Wn.2d at 531. The court stated that "[p]arental unfitness is established by showing that the nonconsenting parent 'has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.' " *Id.*(quoting RCW 26.33.120(1)).

The court discussed the meaning of "parental obligations," adopting five attributes of such obligations first stated in *In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). *H.J.P.*, 114 Wn.2d at 531. The court then held that the trial court "must determine

whether the biological parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." *Id.* at 532.

2. Required Finding of Parental Unfitness

Under *H.J.P.*, a trial court can satisfy the due process requirement of parental unfitness by making findings that track the statutory language.[3] *Id.* at 531. RCW 26.33.120(1) contains two separate requirements. First, a trial court must find that the nonconsenting parent "has failed to perform parental duties." RCW 26.33.120(1). Second, the trial court must find that this failure was "under circumstances showing a substantial lack of regard for his or her parental obligations." *Id.* In other words, the trial court must not only address whether the parent failed to perform parental duties, but it also must consider the circumstances surrounding that failure. Any other interpretation would render the phrase "under circumstances showing a substantial lack of regard for his or her parental obligations" superfluous.

a. Express Finding of Unfitness

The trial court made an express factual finding that MT "has failed to exercise his parental rights," CP at 47, and a conclusion of law that MT "has failed to carry out his parental obligations." CP at 48. This finding and this conclusion satisfied the first parental unfitness requirement in RCW 26.33.120(1).

However, the trial court entered no finding of fact or conclusion of law addressing the second parental unfitness requirement of RCW 26.33.120(1) – whether MT's failure to perform his parental duties were "under circumstances showing a substantial lack of regard for his . . .

---

[3] A trial court also can satisfy due process by making an express finding that the nonconsenting parent is currently unfit to parent his or her child.

parental obligations." The trial court also failed to make an express general finding that MT was currently unfit to parent KMT. Therefore, the trial court's termination order failed to expressly comply with RCW 26.33.120(1) and therefore with due process.

> b. Implied Finding of Unfitness

In the context of a State-initiated parental termination proceeding, the Supreme Court held that an explicit finding of parental unfitness is not always required and that under limited circumstances an appellate court can imply that the trial court found parental unfitness. *A.B.*, 168 Wn.2d at 920-21. The court stated:

> [W]e conclude that when an appellate court is faced with a record that omits an explicit finding of current parental unfitness, the appellate court can imply or infer the omitted finding if – but only if – all the facts and circumstances in the record . . . clearly demonstrate that the omitted finding was actually intended, and thus made, by the trial court. To hold otherwise would be illogical, and it would permit trial and appellate courts easily to sidestep the due process requirement that a judgment terminating parental rights be grounded on an actual (as opposed to a fictional) finding of current parental unfitness.

*Id.* at 921. We adopt this approach in termination proceedings under RCW 26.33.120(1). The question here is whether the record is sufficient to permit us to conclude that the trial court actually intended to find that MT was unfit to parent based on the statutory requirements.

At the beginning of its oral ruling the trial court acknowledged that "the statute requires that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for her or his parenting obligations." RP at 201. However, the trial court never again mentioned the "circumstances showing substantial lack of regard for parenting obligations" requirement. The trial court made specific oral findings that MT had failed to perform his parental duties for years and that termination of parental rights and adoption was in

KMT's best interest. But the trial court did not make any oral findings regarding whether the circumstances showed that MT had a substantial lack of regard for his parental obligations.

Some of the trial court's oral comments could suggest such a finding. For instance, the trial court referred to MT's October 2012 letter telling CM that he would drop any pursuit of rights to KMT, and stated:

> You did write the letter in 2012 in which you basically wrote this thing off. I don't think that you really tried very hard after that except to the extent that you're involved in litigation. . . . [I]t also seems to me emotionally you made a decision at that point that you were no longer going to even attempt to be a parent of this child.

RP at 210-11. Deciding to not even attempt to be a parent to KMT may indicate that MT did have a substantial lack of regard for his parental obligations.

On the other hand, the trial court referred to several circumstances that helped explain why MT had not fulfilled his parental obligations. When KMT was an infant, MT was in Afghanistan serving in the Army. The trial court noted that MT took a long time to deal with having a baby and that he was "not well-equipped to deal with anything at that time" because he was "under stress in the service." RP at 211.

And then after MT had some interaction with KMT, CM cut off all contact with him and later returned cards and money he sent for gifts. The trial court stated, "She did not give you in some ways an opportunity at all to do those kinds of things that you could do from a distance." RP at 210. The trial court further stated, "In some ways, I understand that it seemed like it is futile maybe. If it was futile, why do you have to keep trying. They usually don't ask you to do that." RP at 210-11. Nevertheless, the trial court suggested that MT's first priority should have

been getting involved in KMT's life "no matter how hard her mom is going to make it." RP at 212.

Finally, the trial court stated that "there were moments where you wanted to perform your parental duties." RP at 213. But the trial court immediately stated that "there have been years where you have failed to do so." RP at 213.

The evidence recounted in the trial court's oral ruling provided some support for a finding that MT showed a substantial lack of regard for his parental obligations *if* the trial court intended to make such a finding. However, under *A.B.* it is difficult to conclude that "the omitted finding was actually intended, and thus made, by the trial court." 168 Wn.2d at 921. Instead, the trial court's oral ruling and its written findings and conclusions also are consistent with the trial court believing that it only had to find that MT failed to perform his parental duties and was not required to make an additional finding that MT showed a substantial lack of regard for those duties. As the court stated in *A.B.*, due process requires that "a judgment terminating parental rights be grounded on an actual (as opposed to a fictional) finding of current parental unfitness." 168 Wn.2d at 921.

RCW 26.33.120(1) requires that the trial court find by *clear, cogent, and convincing evidence* that a parent's failure to perform parental duties was under circumstances showing a substantial lack of regard for those duties. The trial court acknowledged that whether to terminate MT's parental rights was a close case. Given the somewhat ambiguous discussion of the circumstances surrounding MT's failure to perform his parental duties, we are unable to imply the required finding.

c.     Summary

The trial court's termination order did not contain an express finding of fact that failure to perform parental duties was under circumstances showing a substantial lack of regard for those duties.  And we cannot imply such a finding.  Therefore, we hold that in the absence of the required finding under RCW 26.33.120(1), termination of MT's parental rights violated both the statute and substantive due process.[4]

3.     No Requirement to Find Harm to Child

MT argues that the trial court's termination order also violated substantive due process because the trial court did not make a finding that termination was necessary to prevent harm to KMT.  We hold that due process does not require such a finding.

MT cites no authority establishing that due process requires a finding of harm to the child before a trial court can terminate parental rights under RCW 26.33.120(1).  The Supreme Court did not reference such a requirement in *H.J.P.*  And RCW 26.33.120(1) does not impose a "harm to the child" requirement.

The two primary cases MT cites involve grandparent visitation issues: *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 55, 109 P.3d 405 (2005), and *In re Custody of Smith*, 137 Wn.2d 1, 5, 969 P.2d 21 (1998).  MT also cites to *In re Welfare of Sumey*, in which the Supreme Court held that the State could impose a temporary residential placement of a child away from his or her parents even in the absence of a finding that the parents were unfit in order to protect the child

---

[4] MT also argues that the evidence is insufficient to support a finding that his failure to perform parental duties was under circumstances showing a substantial lack of regard for those duties. But because the trial court did not make such a finding, we do not address this argument.

from physical, mental, or emotional harm. *See* 94 Wn.2d 757, 763-65, 621 P.2d 108 (1980). These cases do not address termination of parental rights under the adoption statute.

We hold that MT has not shown that a finding that the child would be harmed if parental rights are not terminated is a due process requirement for termination of parental rights under RCW 26.33.120(1).

4.    Directions on Remand

Because we hold that the trial court failed to make a required finding under RCW 26.33.120(1), we must reverse the trial court's termination of MT's parental rights and decree of adoption. "[A] judgment terminating parental rights cannot stand absent a finding of current parental unfitness." *A.B.*, 168 Wn.2d at 927. However, we must determine the appropriate directions on remand.

There are at least three alternatives. First, we could dismiss the termination action with prejudice. In *A.B.*, the Supreme Court was unable to imply the existence of a finding of parental unfitness and therefore reversed the judgment terminating parental rights. *Id.* The court then concluded without discussion or analysis that "lack of an essential finding is presumed equivalent to a finding against a party with the burden of proof" and remanded to the trial court with directions to dismiss the termination case with prejudice. *Id.* But the court in *A.B.* did not hold that all termination cases must be dismissed with prejudice if the trial court fails to make an essential finding. And the court provided no analysis of the different options for directions on remand. Therefore, we believe that the holding in *A.B.* should be limited to the facts of that case.

Second, we could remand this case for a new trial. But the trial court already has heard the evidence. The only issue is whether the trial court will decide to find, based on the evidence

already presented, that MT failed to perform his parental duties under circumstances showing a substantial lack of regard for those duties. We believe that requiring the parties to retry the case under these circumstances would be inefficient and not in KMT's best interest.

Third, we could remand for the trial court to determine whether or not to make the required finding regarding the circumstances of MT's failure to satisfy his parental obligations. The trial court could consider, based on the evidence produced at trial, whether CM and EM established by clear, cogent, and convincing evidence that MT's failure to perform his parental duties were under circumstances showing a substantial lack of regard for those duties.

Under RAP 12.2, we may reverse, affirm, or modify the decision being reviewed "and take any other action as the merits of the case and the interest of justice may require." We believe that the interest of justice requires a remand for the trial court to address whether under RCW 26.33.120(1) clear, cogent, and convincing evidence establishes that MT failed to perform his parental duties under circumstances showing a substantial lack of regard for his parental obligations. If the trial court makes this finding in the affirmative, the trial court may reenter its previous findings of fact and conclusions of law, supplemented by its finding on remand, and reenter the termination and adoption orders. Alternatively, if the trial court decides that it cannot make this finding, then due process requires that the trial court deny CM and EM's request for termination of MT's parental rights and EM's petition to adopt KMT.

B.    APPEARANCE BY TELEPHONE

MT argues that the trial court violated his procedural due process rights by ruling that he did not have the right to appear by telephone on the first day of the termination trial. We decline

to address MT's procedural due process argument because he failed to object to the trial court's ruling and he cannot show manifest error under RAP 2.5(a)(3).

Initially, we reject MT's argument that he preserved his procedural due process argument for appeal. MT's attorney informed the trial court that MT would be appearing by telephone. But the subsequent discussion involved whether MT should be allowed to *testify* by telephone. When the trial started, MT's attorney did not request that MT be allowed to appear by telephone. And MT's attorney did not object or even comment when CM and EM's attorney raised the issue and the trial court ruled that MT had no right to appear by telephone.

A party generally waives the right to appeal an error unless there is an objection in the trial court. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). Under RAP 2.5(a)(3), one exception is for "manifest error affecting a constitutional right." *See also Kalebaugh*, 183 Wn.2d at 583. To determine whether to consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude and (2) the error is manifest. *Id.* An error is manifest when the appellant shows actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). The asserted error must have practical and identifiable consequences in the trial court. *Id.*

Here, MT arguably makes a claim of constitutional magnitude. As noted above, parents have a fundamental liberty interest in the care, custody, and management of their children. *H.Q.*, 182 Wn. App. at 550.

And the trial court may have erred in ruling that MT did not have a right to appear by telephone. Because of the constitutional interests at stake, parents in termination proceedings are afforded greater due process rights than in other civil proceedings. *See L.R.*, 180 Wn. App. at

723.  Procedural due process requires that parents in a termination hearing have an opportunity to be heard, which generally includes the right to be present.  *Id.*  Although this right is not absolute, under certain circumstances due process might require a parent's attendance.  *Id.* at 723-24.  Therefore, the trial court's broad statement that MT had no right to attend the trial because the termination of parental rights is a civil matter was incorrect.

But even if the trial court erred, the question here is whether MT's argument involves a *manifest* error – one that involved identifiable prejudice.  MT does not allege any actual prejudice in his argument that the trial court's ruling was a manifest error.  MT argues on the merits of his procedural due process claim that his presence by telephone while CM was testifying may have made a difference in the trial.  He apparently claims that his telephonic presence would have assisted his attorney in cross-examining CM.  But MT fails to identify any specific way his presence would have affected CM's cross-examination.

Further, the trial court granted MT's request to recall CM as a witness in his case in chief when he was present and left open the possibility that MT could use leading questions.  But MT decided not to recall CM.  This decision suggests that MT's presence was not significant for CM's cross-examination.

We hold that because MT cannot show any actual prejudice, the trial court's ruling that MT had no right to appear by telephone on the first day of trial was not a manifest error under RAP 2.5(a)(3).  Accordingly, we decline to address MT's procedural due process argument.

CONCLUSION

We reverse the trial court's termination and adoption orders and remand for the trial court to address, consistent with this opinion and based on the existing record, whether under RCW

19

26.33.120(1) clear, cogent, and convincing evidence establishes that MT's failure to perform parental duties was "under circumstances showing a substantial lack of regard for his or her parental obligations" and for other proceedings.

MAXA, J.

We concur:

JOHANSON, J.

BJORGEN, C.J.