IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Adoption of K.M.T., | No. 79668-2-I |
| | DIVISION ONE |
| MATTHEW TODD, | |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| CRYSTAL MURPHY and ERIC MURPHY, | |
| Respondents. | FILED: June 17, 2019 |

CHUN, J. — Matthew Todd and Crystal Murphy had a child together after a brief relationship. The child, K.M.T., was born during Todd's military deployment in Afghanistan. After several years of failed attempts to co-parent, Murphy petitioned the court to terminate Todd's parental rights and grant an adoption order for her husband, Eric Murphy, whom she married after her relationship with Todd.[1]

After a trial at which Todd, Murphy, and Eric testified, the court terminated Todd's parental rights and ordered K.M.T.'s adoption by Eric. Todd appealed. This court reversed and remanded because the trial court did not address whether Todd failed to perform parental duties under circumstances showing a

___

[1] For clarity, we refer to Crystal Murphy as "Murphy" and Eric Murphy as "Eric." We intend no disrespect.

substantial lack of regard for those duties.

On remand, the court entered a Decision and Order on Mandate (May 17 Decision) to address the error identified on appeal. The trial court additionally entered its Second Amended Findings of Facts and Conclusions of Law (Second Amended FFCL), which incorporated the May 17 Decision and terminated Todd's parental rights.

Todd now appeals for the second time, claiming the trial court failed to correct the error in its initial findings of facts and conclusions of law and that insufficient evidence supported the termination order. We conclude that the court's May 17 Decision and Second Amended FFCL corrected the error noted by the first appeal and that clear, cogent, and convincing evidence supported its termination order. Accordingly, we affirm.

I.
BACKGROUND

The opinion from the first appeal contains a full recitation of the underlying facts. See In re Adoption of K.M.T., 195 Wn. App. 548, 552-57, 381 P.3d 1210 (2016) (K.M.T. I).

In the first appeal, we reversed the trial court's order terminating Todd's parent-child relationship with K.M.T. because it "did not contain an express finding of fact that failure to perform parental duties was under circumstances showing a substantial lack of regard for those duties." K.M.T. I, 195 Wn. App. at 564. We remanded with directions to the trial court to address, based on the

existing record, "whether under RCW 26.33.120(1) clear, cogent, and convincing evidence establishes that [Todd] failed to perform his parental duties under circumstances showing a substantial lack of regard for his parental obligations." K.M.T. I, 195 Wn. App. at 566.

On remand, Todd moved to dismiss the termination petition, arguing Murphy and Eric failed to prove he was an unfit parent. The trial court denied the motion. Instead, the court entered its May 17 Decision that addressed the direction from the Court of Appeals to determine whether Todd failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations. In it, the court went through the facts of the start of Todd and Murphy's relationship, his deployment, the birth of their child, their attempt at co-parenting (including discussions about child support and visitation), his discharge from the military for disability, and her marriage to Eric. The court concluded the evidence established that Todd's disinterest in being a parent, and not his military deployment or obstruction by Murphy, caused his failure to perform parental duties.

On November 28, 2017, the trial court entered its Second Amended FFCL, which incorporated the May 17 Decision and terminated Todd's parental rights. It set forth the following findings of fact, including several relevant findings not included in the first FFCL (indicated in bold):

> 2.7.1 Matthew Todd has not seen the child since she was 5 months old (June or July 2010). He has had no other contact with her.
>
> 2.7.2 Matthew Todd has not paid any child support since

March 2011, except for two sporadic money orders that were not accepted by the mother. Support enforcement has been administratively stopped. **Respondent did not take any action to resume payment after it was stopped.**

2.7.3 Matthew Todd has failed to exercise his parental rights **and has shown no interest in being a parent to the child.**

2.7.4 **Matthew Todd has presented himself as an unreliable, disinterested, unpleasant and even scary and potentially dangerous partner for raising their child.**

2.7.5 Child has been integrated in [sic] new family.

2.7.6 Child does not know Matthew Todd as her father.

2.7.7 Child has a half-sibling with mother.

Todd appeals.

## II.
## ANALYSIS

A. Revised Findings

Todd contends the trial court failed to comply with the mandate from the first appeal because its Second Amended FFCL again omitted a finding about substantial lack of regard for parental duties. But the Second Amended FFLC incorporated the May 17 Decision. And because the trial court's extensive May 17 Decision addressed the issue, we disagree.

The trial court's Second Amended FFCL explicitly references its May 17 Decision under the "Basis for Findings" section. The trial court expressly stated in the May 17 Decision that it sought to respond to the Court of Appeals' mandate to "'address, . . . based on the existing record, whether under RCW 26.33.120(1) clear, cogent, and convincing evidence establishes' that [Todd's] 'failure to perform parental duties was "under circumstances showing a

4

substantial lack of regard for his or her parental obligations.""

In the May 17 Decision, the court presented a thorough analysis of the evidence concerning Todd's relationship with both K.M.T. and Murphy. Based on the evidence, the trial court made several findings. Specifically, the court found that Todd "showed no interest in being a parent to [K.M.T.] from the beginning" and that "[t]he evidence demonstrates he wanted to have as little as possible to do with [Murphy] and [K.M.T.]." Further, the court determined that Murphy limited her contact with Todd because he abused her. It indicated Todd "was fine with that because it was [Todd's] own lack of feeling or motivation to discharge his parental obligations to [K.M.T.] and not obstruction by [Murphy] that was the cause of his failure to discharge those obligations." The final finding states, "The court finds and concludes by clear, cogent, and convincing evidence that [Todd's] failure to perform parental duties showed a substantial lack of regard for his . . . parental obligations given the circumstances of this case."

The May 17 Decision extensively considers the evidence presented at trial and explicitly concludes that clear, cogent, and convincing evidence established that Todd's failure to perform his parental duties was under circumstances showing a substantial lack of regard for his parental obligations. This decision conscientiously addressed the Court of Appeals' mandate in K.M.T. I. See 195 Wn. App. at 566.

5

B.   Sufficiency of the Evidence

Todd next argues that the trial did not demonstrate that he was an unfit parent by clear, cogent, and convincing evidence. Murphy claims the evidence supported the trial court's termination order. We agree with Murphy.

The Fourteenth Amendment of the United States Constitution and article 1, section 3 of the Washington State Constitution protect a natural parent's fundamental liberty interest in the care, custody, and management of their child. In re J.D., 42 Wn. App. 345, 347-48, 711 P.2d 368 (1985); In re H.J.P., 114 Wn.2d 522, 526, 789 P.2d 96 (1990). RCW 26.33.120(1), however, enables courts to terminate a parent-child relationship upon a two-part showing:

> [T]he parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for [their] parental obligations and is withholding consent to adoption contrary to the best interest of the child.

Where a trial court has terminated the parent-child relationship, "[a]ppellate review is limited to the determination of whether there is substantial evidence to support the trial court's findings in light of the 'clear, cogent and convincing' standard." In re J.D., 42 Wn. App. at 348 (quoting In re Sego, 82 Wn.2d. 736, 739, 513 P.2d 831 (1973). Under this evidentiary standard, "the ultimate fact in issue must be shown by evidence to be highly probable." In re H.J.P., 114 Wn.2d at 532 (internal quotation marks omitted). "Because of the highly fact-specific nature of termination proceedings, deference to the trial court

6

is 'particularly important.'" In re Parental Rights to K.M.M., 186 Wn.2d 466, 477, 379 P.3d 75 (2016) (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

Todd claims the evidence failed to meet the clear, cogent, and convincing standard as to either of RCW 26.33.120(1)'s requirements—that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for their parental obligations and that termination is in the child's best interest.

1. Circumstances Showing a Substantial Lack of Regard

Todd asserts the evidence does not sufficiently demonstrate a substantial lack of regard for his parental duties. Specifically, he raises the circumstances of his military service and Murphy obstructing his contact with K.M.T.

In addressing Todd's deployment, the court noted that he "should not be penalized for his military service." Ultimately, however, the court found that Todd "showed no interest in being a parent to [K.M.T.] from the beginning." In concluding that Todd's military service did not cause his disregard for parental duties, the court referred to his suggesting that Murphy get an abortion, his statements that the responsibility of a child would stand in the way of his future goals, his hostility to paying child support, and that he has only seen K.M.T. three times in her life. Moreover, in 2012 Todd wrote a letter to Murphy "disclaiming any interest in pursuing 'rights to [their] daughter.'"

As to obstruction by Murphy, the court noted that the parents "got off to a bad start in their relationship" and that Murphy did return at least one support check. But, as the court found, Murphy had first tried to include Todd as a parent. She sent him ultrasounds to which he expressed disinterest and Todd acted "personally and gratuitously abusive" to her when she tried to communicate with him. The evidence also showed that Todd only made a minimal effort to see K.M.T. when he was in Washington. Based on this evidence, the trial court concluded that "it was [Todd's] own lack of feeling or motivation to discharge his parental obligations to [K.M.T.] and not obstruction by [Murphy] that was the cause of his failure to discharge those obligations."

Given this evidence, we decide that the record supports the trial court's determination that clear, cogent, and convincing evidence demonstrated that, given the circumstances of this case, Todd's failure to perform parental duties showed a substantial lack of regard for his parental obligations.

2. Child's Best Interests

Todd additionally challenges the trial court's finding that "Todd has withheld his consent for adoption contrary to the best interests of the child." Again, we conclude that clear, cogent, and convincing evidence supports the finding.

The trial court, which had the ability to observe and evaluate the credibility of the witnesses, found that Todd "has presented himself as an unreliable,

8

disinterested, unpleasant and even scary and potentially dangerous partner for raising [K.M.T.]." Additionally, K.M.T. had already been integrated into a new family, did not know Todd as her father, and has two half-siblings (Murphy and Eric's children).[2] This evidence demonstrates the high probability that termination of Todd's parental rights and adoption by Eric is in K.M.T.'s best interests.

Affirmed.

_____
Chun, J.

WE CONCUR:

_____

_____
Appelwick, CJ

_____
[2] Though the Second Amended FFCL only mentioned a single half-sibling, K.M.T. has two half-siblings.