**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Adoption of:<br><br>D.A.C. | DIVISION ONE<br><br>No. 85619-7-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — M.C. appeals from an order of the superior court terminating her parental rights to her biological child, D.A.C. M.C. contends that the adoption provisions in chapter 26.33 RCW, which authorize involuntary termination of the parent-child relationship and thereby allow for a closed adoption, are unconstitutional. This is so, she avers, because the statute does not require a finding that an open adoption is not a viable less restrictive alternative. However, our courts have repeatedly affirmed the constitutionality of RCW 26.33.120(1), each time ruling that the statute provides biological parents with the requisite due process protections prior to termination of their parental rights. Accordingly, we affirm.

I

M.C. gave birth to D.A.C. in January 2019. No father was identified on the birth certificate. At the time of his birth, D.A.C. tested positive for methamphetamines and heroin.

Upon release from the hospital, M.C. and D.A.C. lived with M.C.'s parents (D.A.C.'s maternal grandparents) as a "protective arrangement" for the child while M.C. received services from Child Protective Services (CPS) to address her substance use. However, M.C. was arrested on warrants in March 2019. CPS subsequently urged D.A.C.'s maternal grandmother to petition for nonparental custody of D.A.C. She did so, and nonparental custody was granted to her. M.C. was granted supervised visitation rights.

Thereafter, however, D.A.C.'s maternal grandfather became terminally ill and D.A.C.'s grandmother could no longer care for D.A.C. In May 2019, after consulting with CPS, physical custody of D.A.C. was transferred to M.W., a family friend. Legal custody of D.A.C. was transferred to M.W. shortly thereafter. At all times since, D.A.C. has resided with M.W.

After M.W. took custody of D.A.C., M.C. continued to have visitation with D.A.C. supervised by D.A.C.'s maternal grandparents. On one occasion, however, M.C. assaulted her mother, D.A.C.'s grandmother, during a visit. Consequently, in June 2019, the superior court ordered professional supervision to be present for all of M.C.'s future visitations with D.A.C. From that date forward, M.C. made no effort to have contact with D.A.C.

In March 2020, the court entered a final nonparent custody order granting custody to M.W. The order found that M.C. had abandoned and neglected D.A.C. and, therefore, she would have no visitation.

2

On April 6, 2020, M.W. filed a petition to terminate the parent-child relationship of M.C. and any putative fathers of D.A.C. and also petitioned for adoption of D.A.C.

In May 2020, M.C. informed J.S. that he was a likely father of D.A.C. J.S. has a lengthy criminal history, including recent felony convictions for which he is serving a sentence of 129 months of incarceration.

In November 2020 and again in February 2021, J.S. contacted M.W., indicating that he was the likely father of D.A.C. Thereafter, M.W. paid for a paternity test that established J.S. as D.A.C.'s biological father. M.C. and J.S. then worked together to change D.A.C.'s birth certificate to include J.S. as the father.

Between March 2022 and January 2023, a multi-hearing trial on the petition for termination occurred over the course of several months. Thereafter, in June 2023, the trial court entered findings of fact and conclusions of law in which it determined that clear, cogent, and convincing evidence demonstrated that both M.C. and J.S. "have engaged in a consistent pattern of behavior, both before and after [D.A.C.'s] birth, which have rendered them unfit to perform parental functions," and that "their failure to perform parenting functions is under circumstances showing a substantial lack of regard for parental obligations." As such, the court concluded, the termination of M.C.'s and J.S.'s parental rights as to D.A.C. and M.W.'s proposed adoption of D.A.C. are in the best interest of D.A.C. The court then entered orders terminating the parent-child relationships between D.A.C. and each of his biological parents.

M.C. now appeals.[1]

II

M.C. has not assigned error to any of the trial court's findings of fact. They are therefore verities on appeal. In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012). Nor does she challenge either the sufficiency of the evidence supporting the trial court's finding of parental unfitness or the court's determination that termination is in D.A.C.'s best interest pursuant to RCW 26.33.120(1). Rather, she contends on appeal that the statute violates her constitutional rights because it does not require that a trial court, as part of its consideration of the child's best interest, find that open adoption is not a viable option.

We review the constitutionality of a statute de novo. In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015). Additionally, we presume that the statute is constitutional, and the party challenging that presumption bears the burden of proving beyond a reasonable doubt that the statute is unconstitutional. A.W., 182 Wn.2d at 701. "The beyond a reasonable doubt standard when used in this context describes not an evidentiary burden, but rather a requirement that the challenger convince the court that there is no reasonable doubt that the statute violates the constitution." A.W., 182 Wn.2d at 701.

M.C. challenges the constitutionality of RCW 26.33.120(1) which, in the context of adoption, allows for termination of parental rights without consent of the biological parents. See In re Matter of H.J.P., 114 Wn.2d 522, 526, 789 P.2d

---

[1] J.S. separately appealed but has since voluntarily dismissed his appeal.

96 (1990); In re Adoption of K.M.T., 195 Wn. App. 548, 559, 381 P.3d 1210 (2016). The statute provides, in pertinent part, that

> the parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

Constitutional principles limit a trial court's ability to terminate a parent-child relationship. K.M.T., 195 Wn. App. at 559. Indeed, "[p]arents have a fundamental liberty interest in the right to the care, custody, and management of their children, and they do not lose this right simply because they have not been model parents." A.W., 182 Wn.2d at 702. Thus, "any state action that would terminate a parent-child relationship must satisfy due process." K.M.T., 195 Wn. App. at 559.

Our Supreme Court's decision more than 30 years ago in H.J.P., 114 Wn.2d 522, is instructive. There, the court considered a due process challenge to the termination of parental rights pursuant to RCW 26.33.120(1). In so doing, the court examined the statute with respect to the due process accorded to parents by Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), which requires, at a minimum, the application of the clear and convincing standard of proof and a showing of parental unfitness. H.J.P., 114 Wn.2d at 527-28. The court noted that "in order for the court to terminate the parental rights of a nonconsenting parent, it must find parental unfitness on the part of the

nonconsenting parent," as established by a showing "that the nonconsenting parent 'has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.'" H.J.P., 114 Wn.2d at 531 (quoting RCW 26.33.120(1)).

Therefore, with respect to RCW 26.33.120(1), we have recognized that "[o]ur Supreme Court has held that the requirement of proof by clear, cogent, and convincing evidence and the statute's focus on parental unfitness satisfy the constitutional standard set forth in Santosky, rejecting procedural and substantive attacks on the standard for termination under the act." In re Interest of Infant Child Skinner, 97 Wn. App. 108, 114-15, 982 P.2d 670 (1999). Accordingly, by those terms, RCW 26.33.120(1) provides biological parents with the requisite due process protections prior to terminating their parental rights. Further, since H.J.P., our courts have reiterated that a finding of parental unfitness supported by clear, cogent, and convincing evidence satisfies due process with respect to termination of the parent-child relationship. See Skinner, 97 Wn. App. at 114-15; In re Adoption of McGee, 86 Wn. App. 471, 477, 937 P.2d 622 (1997) ("[T]he ultimate inquiry required by due process for termination of the child-parent relationship, in all contexts, is parental unfitness."); K.M.T., 195 Wn. App. at 559 (compliance with the statutory requirements of RCW 26.33.120(1) satisfies due process).

Nevertheless, M.C. claims that a terminated parent has a due process right in the form of adoption approved for the child, specifically an open adoption. However, RCW 26.33.120(1) merely refers to "adoption" without any

6

requirements as to the form. The legislature has not indicated a preference for the type of adoption that should occur after termination of parental rights, and any such preference would be a policy decision for the legislature.[2]

Moreover, a parent cannot argue that due process "creates a right to open adoption for the simple reason that the cessation of parental rights is one of open adoption's necessary prerequisites." In re Dependency of A.N.C., 24 Wn. App. 2d 408, 421, 520 P.3d 500 (2022), review denied, 1 Wn.3d 1012 (2023). Once a court has made the findings of fact necessary under both due process and RCW 26.33.120(1), the court may order termination which "divests the parent and the child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other." RCW 26.33.130(2). The subsequent determination

---

[2]The legislature has enacted RCW 26.33.295 which states, in pertinent part that "[n]othing in this chapter shall be construed to prohibit the parties to a proceeding under this chapter from entering into agreements regarding communication with or contact between child adoptees, adoptive parents, siblings of child adoptees, and a birth parent or parents." The statute further outlines the requirements for such agreements:

> (2) Agreements regarding communication with or contact between child adoptees, adoptive parents, siblings of child adoptees, and a birth parent or parents shall not be legally enforceable unless the terms of the agreement are set forth in a written court order entered in accordance with the provisions of this section. The court shall not enter a proposed order unless the terms of such order have been approved in writing by the prospective adoptive parents, any birth parent whose parental rights have not previously been terminated, and, if the child or siblings of the child are in the custody of the department or a licensed child-placing agency, a representative of the department or child-placing agency. If the child is represented by an attorney or guardian ad litem in a proceeding under this chapter or in any other child-custody proceeding, the terms of the proposed order also must be approved in writing by the child's representative. An agreement under this section need not disclose the identity of the parties to be legally enforceable. The court shall not enter a proposed order unless the court finds that the communication or contact with the child adoptee, as agreed upon and as set forth in the proposed order, would be in the child adoptee's best interests.

RCW 26.33.295. This court has considered the statute and concluded that "[t]he provision does not, by its plain language, create a right. It instead allows for the various necessary parties to enter into an agreed order. After the court has determined that open adoption serves the best interests of the children involved, the order is then enforceable by the court." In re Dependency of A.N.C., 24 Wn. App. 2d 408, 421, 520 P.3d 500 (2022), review denied, 1 Wn.3d 1012 (2023).

of the child's placement is no longer a concern for the parent whose rights have been terminated.

Here, the trial court complied with the due process requirements for terminating the parent-child relationship as affirmed in H.J.P. and its progeny. The trial court determined that clear, cogent, and convincing evidence demonstrated that M.C. engaged in a consistent pattern of behavior such that she was unfit to perform parental functions and that her failure to perform parental functions showed a substantial lack of regard for parental obligations. Additionally, the trial court found sufficient evidence to satisfy the statutory requirement that termination of M.C.'s parental rights was in the best interests of the child. In so doing, the trial court properly terminated M.C.'s parental rights. She no longer has an interest in D.A.C.'s placement.

Because the trial court did not err and M.C.'s constitutional challenge to RCW 26.33.120(1) is unavailing, we affirm the order terminating her parental rights to D.A.C.

Affirmed.

Dwyer, J.

8

WE CONCUR:

*Birk, J.*   *Chung, J.*