## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of: | ) |
| | ) |
| Z.F.S., dob 01/06/13, | ) No. 75104-2-I |
| | ) |
| A minor child. | ) ORDER GRANTING MOTION |
| | ) FOR RECONSIDERATION |
| STATE OF WASHINGTON, | ) AND MOTION TO SUPPLEMENT |
| DEPARTMENT OF SOCIAL AND | ) THE RECORD, WITHDRAWING |
| HEALTH SERVICES, | ) OPINION, AND SUBSTITUTING |
| | ) OPINION |
| Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| MARIE SMITH, | ) |
| | ) |
| Appellant. | ) |

Appellant, Marie Smith, has filed a motion for reconsideration of this court's opinion filed on April 17, 2017, and a motion to supplement the record on appeal. Respondent, Department of Social and Health Services, has filed a response to appellant's motions. The panel has determined that appellant's motion for reconsideration and appellant's motion to supplement the record should be granted. The panel has further determined that the opinion filed on April 17, 2017, should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration and appellant's motion to supplement the record are granted. It is further

No. 75104-2-I/2

ORDERED that the opinion filed on April 17, 2017, is withdrawn and a substitute opinion be filed.

DATED this 19th day of June, 2017.

Becker, J.

WE CONCUR:

Mann, J.

Schindler, J.

FILED
COURT OF APPEALS DIV-I
STATE OF WASHINGTON
2017 JUN 19 AM 9: 20

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of:

Z.F.S., dob 01/06/13,

    A minor child.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

    Respondent,

    v.

MARIE SMITH,

    Appellant.

No. 75104-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 19, 2017

2017 JUN 19 AM 9: 16
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

BECKER, J. — Marie Smith appeals the denial of her motion to vacate an order terminating her parental rights to her son, Z.F.S. She contends the court violated CR 60(e)(2) and her right to due process by denying the motion to vacate without first holding a hearing. We affirm.

Smith is the biological mother of Z.F.S., born on January 6, 2013. The parental rights of Z.F.S.'s father were terminated in 2014 and are not at issue in this appeal.

Shortly after the child's birth, the court entered an order of dependency. The order recited Smith's history of "severe mental health issues," inpatient and outpatient mental health treatment, alcohol and marijuana dependence, and a history of chemical dependency treatment and relapse. It stated that Smith "continues to act erratically, to appear delusional, and to become highly intoxicated." Smith had recently made numerous calls to fire departments and law enforcement with bizarre behaviors and reports.

The court ordered Smith to participate in a psychological evaluation, which was later administered by psychologist Steve Tutty. Dr. Tutty diagnosed Smith with bipolar disorder, poor executive functioning, and suspected alcohol abuse. A chemical dependency assessment administered by Sound Mental Health concluded that Smith showed signs of alcohol and marijuana dependence.

In September 2014, following largely unsuccessful attempts to treat Smith's mental health and substance abuse issues, the Department of Social and Health Services petitioned to terminate her parental rights. The petition stated in part that Smith demonstrated an unwillingness to participate in or successfully complete services offered and that she "has a severe and debilitating mental illness for which she refuses to obtain treatment or medication." The petition also stated that Smith abuses alcohol and had not completed a chemical dependency assessment or urinalysis testing.

During trial on the petition, Smith's counsel told the Department that Smith was interested in an open adoption. The parties subsequently reached an

2

agreement under which Smith would voluntarily relinquish her parental rights and the child would be placed in an open adoption. Before accepting the agreement, the court asked Smith and her counsel the following questions:

> [THE COURT:] . . . I have the relinquishment of custody, consent to termination, adoption, and waiver of rights and received notice of proceedings which has been signed by Ms. Smith and signed by [counsel] as a witness. Have you been through that entire document with Ms. Smith?
> [COUNSEL]: Yes, I have, your Honor.
> THE COURT: Okay. And do you believe she fully understands that document?
> [COUNSEL]: Yes.
> THE COURT: Are you satisfied that it's a knowing, intelligent, and voluntary waiver of the rights that she's giving up?
> [COUNSEL]: Yes.
> THE COURT: Okay. Ms. Smith, do you have any further questions for [your counsel] or for me?
> MS. SMITH: No, your Honor.

This colloquy occurred on February 19, 2015. The court informed Smith she had 48 hours to revoke her relinquishment for any reason.

Smith did not change her mind, and on February 23, 2015, the court entered, and Smith signed, a "Relinquishment of Custody, Consent to Termination/Adoption, and Waiver of Right to Receive Notice of Proceedings." The document stated:

> 4. I hereby consent to termination of my parental rights and request the Court to enter an order permanently terminating all of my parental rights to the child. I further consent to the child's adoption and also authorize the Department of Social and Health Services to consent, on my behalf, to the child's adoption.
> 5. I understand that the legal effect of this consent will be to divest me of all legal rights and obligations with respect to the child, except for past due support obligations with respect to the child. I also understand that the child will be freed from all legal obligations of obedience and maintenance with respect to me, and shall be, to

3

all legal intents and purposes, and for all legal incidents, the child, legal heir and lawful issue of the ultimate adoptive parents, entitled to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition, and subject to all obligations of a child of such adoptive parents as if born to such adoptive parents. . . .

6. I understand that my decision to relinquish the child is an extremely important one, that the legal effect of this relinquishment will be to take from me all legal rights and obligations with respect to the child, and that an order permanently terminating all of my parental rights to the child will be entered. . . .

. . . .

10. I understand that after this consent is approved by the court, it is not revocable except for fraud or duress practiced by the person, department or agency requesting the consent or for lack of mental competency at the time the consent was given by me. Under no circumstances can I revoke this consent later than one year after it is approved by the Court.

. . . .

13. I have read or have had read to me the foregoing and I hereby understand the same. The foregoing consent has been given freely, voluntarily, and with full knowledge of the consequences, and the consent is not the result of fraud or duress, nor am I acting under the influence of anyone.

Smith, the adoptive parents, and the child, through a Court Appointed Special Advocate, entered a written stipulation, agreement, and findings regarding the adoption. The agreement recited that it was "entered into by all parties willingly, without force, duress, or coercion." The agreement included a finding by the court to the same effect, as well as findings that the parties had access to counsel before signing the agreement and that the agreement was in the child's best interests. Bold print located immediately above the parties' signatures stated:

The . . . parties declare under the penalty of perjury . . . that they have read the foregoing Stipulation, Agreement, Findings of Fact, Conclusions of Law And Order Regarding Communication

4

And Contact Between Birth Parent, Child Adoptee And Adoptive Parents, understand and agree with the contents thereof, and consent to its entry by this court.

The court entered findings and conclusions terminating Smith's parental rights. The court found that Smith "understood the consequences of . . . her acts and was not acting under fraud, duress, or mistake of fact, and that the written consent was validly executed." The court concluded that Smith "executed a valid relinquishment" and that termination was in the best interests of the child.

One year later, Smith filed a "Motion for Order to Show Cause and Respondent's Motion to Vacate Order Terminating The Parent-Child Relationship as to the Mother." The motion sought relief from the termination order under the following authorities:

> CR 60(b)(1) (irregularity in obtaining an order or judgment); CR 60(b)(2) (erroneous proceedings against a person of unsound mind not appearing on the record); CR 60(b)(11) (other reasons justifying relief from judgment); RCW 26.33.070 (appointment of a guardian ad litem for a parent in adoption proceedings); RCW 26.33.160(g) (lack of mental competence of parent signing revocation).

Smith's proposed "Order to Show Cause" ordered an evidentiary hearing as to why the Order Terminating the Parent-Child Relationship as to the Mother should not be vacated.

In a supporting memorandum, Smith argued that, given her mental health issues, "the Court should have appointed a guardian ad litem to assist her in signing the relinquishment or sought the assistance of Dr. Tutty in determining if Ms. Smith could rationally sign such a document." Smith alleged in a supporting declaration that she was drinking, not consistently participating in mental health

5

services, and "very 'strung out'" when she relinquished her parental rights. Smith

filed a copy of Dr. Tutty's 2014 evaluation, which discussed her poor executive

functioning, bipolar disorder, and other mental health issues.

On March 21, 2016, the court denied Smith's motion to vacate, stating in

part:

> Smith raises the following legal authorities:
>
> **RCW 26.33.070(1).** This statute applies to an incompetent party. But based on the proceedings before the Court, the Court found, on February 23, 2015, that Smith executed a valid consent to termination of the parent-child relationship and in doing so, "*she understood the consequences of . . . her acts* and was not acting under fraud, duress, or mistake of fact. . . ." These proceedings included the undersigned judge's in-person observation of three days of trial and Smith's lengthy live testimony. This allowed the judge to carefully observe Smith's demeanor, credibility, and competence. The proceedings also included the judge's questions to Smith's attorney and the attorney's affirmation that Smith fully understood the consent-to-termination papers and that Smith's consent was knowing, intelligent, and voluntary. Moreover, as Smith concedes, appointment of a guardian ad litem in this scenario is discretionary. Under the facts of this case, the Court did not abuse its discretion in not appointing a GAL.
>
> **RCW 26.33.160(3).** This statute allows "a consent [to] be revoked for fraud or duress . . . or for lack of mental competency on the part of the person giving the consent at the time the consent was given," which must be proved by clear, cogent, and convincing evidence. Smith has not submitted evidence that meets this high burden of proof. For example, Dr. Steve Tutty's evaluation from over a year before Smith relinquished her rights is not sufficient. Procedurally, the evaluation is an unsworn statement and it is hearsay; for each reason, it is not admissible evidence. Even if it were admissible, substantively, it does not meet the high burden of clear, cogent, and convincing evidence that Smith was mentally incompetent, especially in light of the Court's contemporaneous observations and findings noted above.
>
> **CR 60(b)(2).** This rule allows relief from a final judgment due to "erroneous proceedings against a minor or person of unsound mind. . . . ." Smith has not submitted evidence that proves she was

of "unsound mind" in February 2015, especially in light of the Court's contemporaneous observations and findings noted above.
        **CR 60(b)(1); CR 60(b)(11); In re HQ, 182 Wn. App. 541 (2014).** These authorities, too, do not justify granting Smith's motion to vacate.
        The nonmoving party, DSHS, has responded to the Motion. And Smith has not raised material, disputed facts. That is, even if accepted as true, the evidence that Smith submits now does not overcome the Court's February 2015 findings that Smith understood her acts and does not justify vacating the order terminating her parental rights, for the reasons stated above. Therefore, there is no reason to set a show cause hearing.[1]

Smith appeals.

Following our initial decision in this case, Smith moved to supplement the record with the proposed "Order to Show Cause" mentioned above. The State does not oppose the motion. We grant the motion to supplement the record. Smith also moved for reconsideration of our adherence to our prior decision in Stoulil v. Edwin A. Epstein, Jr., Operating Co., 101 Wn. App. 294, 298, 3 P.3d 764 (2000), and our conclusion that the trial court did not err in failing to hold a hearing on his motion to vacate. The motion for reconsideration is denied. We note that Smith appears to regard our decision in Grisby v. Herzog, 190 Wn. App. 786, 362 P.3d 763 (2015), as a sign that the Court of Appeals is in a state of perpetual revolution. That is not the case. While Grisby recognized that panels of this court are free to disagree with each other, we nevertheless "strive not to be in conflict with each other because, like all courts, we respect the doctrine of stare decisis." Grisby, 190 Wn. App. at 807.

---

[1] (Some alterations in original.) (Footnotes omitted.)

7

Hearing on Motion To Vacate / CR 60(e)(2)

Smith first contends that the trial court erred in deciding her motion to vacate without holding a hearing as required by CR 60(e)(2). The rule states:

> (2) *Notice.* Upon the filing of the motion and affidavit, the court shall enter an order fixing the time and place of the hearing thereof and directing all parties to the action or proceeding who may be affected thereby to appear and show cause why the relief asked for should not be granted.

Smith claims the word "shall" required the court to hold a hearing on a properly filed motion.

We rejected an essentially identical argument in Stoulil, 101 Wn. App. at 298. There, the trial court denied a CR 60(b) motion without scheduling a hearing or taking evidence. Stoulil, 101 Wn. App. at 297. On appeal, the appellants claimed that CR 60(e) "unequivocally requires oral hearings on motions to vacate." Stoulil, 101 Wn. App. at 298. We rejected this claim. Referring to cases holding that CR 60(e)(2) is purely a notice provision and that oral testimony on a CR 60(b) motion is discretionary absent disputed issues of fact, we stated:

> When a judge ruling on a motion to vacate presided over the trial, the nonmoving party had ample opportunity to respond and did not request oral argument, and the motion is based on undisputed facts that could have been presented at trial, a trial judge may deny a CR 60 motion without hearing argument.

Stoulil, 101 Wn. App. at 298 (footnotes omitted). In the nearly 17 years since we decided Stoulil, our State Supreme Court has not amended CR 60(e)(2) or

8

expressed any disagreement with our interpretation of it. We adhere to our decision in Stoulil.

Contrary to Smith's assertions, Stoulil is not materially distinguishable from this case. In both cases, the judge ruling on the motion to vacate also presided over the trial, the nonmoving party had ample opportunity to respond, the nonmoving party did not request a hearing, and the evidence submitted in support of the motion could have been presented during the proceedings challenged in the motion. In this case, Dr. Tutty's prerelinquishment evaluation and Smith's declaration could have been presented in the proceedings below.

Significantly, the evidence Smith submitted in support of her motion did not create a material factual dispute requiring a hearing. A biological parent's consent to relinquishment and adoption can be revoked on a showing of mental incapacity of the relinquishing parent. RCW 26.33.160(3); In re Welfare of J.N., 123 Wn. App. 564, 573, 95 P.3d 414 (2004), review denied, 154 Wn.2d 1003 (2005). But Washington courts presume mental competency unless shown otherwise by clear, cogent, and convincing evidence. Binder v. Binder, 50 Wn.2d 142, 148-49, 309 P.2d 1050 (1957); see In re Welfare of J.N., 123 Wn. App. 564, 573, 95 P.3d 414 (2004), review denied, 154 Wn.2d 1003 (2005). Smith's evidence fell far short of this standard.

Dr. Tutty's evaluation was unsworn hearsay and thus inadmissible. The evaluation took place over a year before Smith relinquished her rights and thus shed little light on her competency at the time of relinquishment. Similarly,

Smith's conclusory and self-serving declaration alleging she was "strung out" and drinking at the time of her relinquishment provided little, if any, support for her incompetency claim. This evidence fell well short of the clear, cogent, and convincing evidence needed to overcome the presumption of competency. This is particularly true given the court's findings and Smith's representations that, at the time of relinquishment, her decision was voluntarily, knowingly, and intelligently made.

The trial court did not violate CR 60(e)(2) in deciding Smith's motion to vacate without holding a hearing.

Hearing on Motion To Vacate / Due Process

For the first time on appeal, Smith contends the court's failure to hold a hearing on her motion to vacate violated due process. To obtain review of a claim raised for the first time on appeal, Smith must demonstrate manifest constitutional error—i.e., a constitutional error that actually prejudiced her rights at trial. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 155 P.3d 125 (2007). She has not done so.

As discussed above, the evidence submitted in support of Smith's motion to vacate was insufficient as a matter of law to warrant a hearing under CR 60 and the authorities Smith cited below. She cannot demonstrate prejudice from any alleged violation of due process.

In any event, there was no violation of due process. Due process requires notice and an opportunity to be heard, but it guarantees no particular form of

procedure. Mitchell v. W.T Grant Co., 416 U.S. 600, 610, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); In re Dependency of R.L., 123 Wn. App. 215, 222, 98 P.3d 75 (2004). Thus, it does not grant parties an *inherent* right to present oral testimony or argument. In re Dependency of R.L., 123 Wn. App. at 222; Hanson v. Shim, 87 Wn. App. 538, 551, 943 P.2d 322 (1997), review denied, 134 Wn.2d 1017 (1998); State v. Howe, 44 Wn. App. 559, 565, 723 P.2d 452, review denied, 107 Wn.2d 1014 (1986); Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 697, 41 P.3d 1175 (2002). The process due in any particular circumstance is determined by balancing: (1) the private interest affected by the proceeding; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the State's interest. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Contrary to Smith's assertions, these factors do not weigh in favor of an evidentiary hearing on her CR 60 motion.

The private interest at stake in Smith's termination proceedings—i.e., her liberty interest in the care and custody of her child—was undeniably great. In re Welfare of L.R., 180 Wn. App. 717, 724, 324 P.3d 737 (2014). But the State's parens patriae interest and interest in finality were also great. The parens patriae interest is an urgent interest in "promoting the welfare of the child" with the goal of providing "a safe, stable, and permanent home and a speedy resolution of any dependency and termination proceedings." In re Dependency of T.R., 108 Wn. App. 149, 157-60, 29 P.3d 1275 (2001); In re Dependency of M.S., 98 Wn. App.

91, 95, 988 P.2d 488 (1999). The State also "has an interest in providing finality to adoption proceedings to ensure the welfare of the adopted child." In re Adoption of Infant Boy Crews, 60 Wn. App. 202, 218, 803 P.2d 24 (1991), affirmed, 118 Wn.2d 561, 825 P.2d 305 (1992). "The difficulty of setting aside a consent reflects a public policy favoring finality in relinquishment proceedings." In re Dependency of M.S., 156 Wn. App. 907, 914-15, 236 P.3d 214 (2010), review denied, 170 Wn.2d 1027 (2011); In the Matter of A.S., 65 Wn. App. 631, 640, 829 P.2d 791 (1992) (noting that the "relinquishment and adoption statutes are intended to protect the best interests of the child, to achieve finality in the placement of children, and protect new family relationships from disturbance by natural parents").

The third Mathews factor—the risk of an erroneous deprivation of Smith's parental rights through the procedures used—supports a conclusion that Smith received due process. It is undisputed that Smith's decision to relinquish her parental rights was made with the assistance of counsel. Her counsel told the court, and Smith represented, that she understood what she was doing and was voluntarily, knowingly, and intelligently relinquishing her parental rights. The trial judge entered findings to the same effect. Smith had 48 hours to change her mind for any reason and chose to proceed with relinquishment. When she moved to vacate her relinquishment, the evidence she submitted in support of the motion was insufficient, as a matter of law, to overcome the presumption of competence or the affirmative findings and representations demonstrating her

12

competence at the time of relinquishment. Thus, the risk of an erroneous deprivation of Smith's rights under the process provided was extremely low.

In short, the court's failure to hold a hearing on Smith's motion did not violate due process.

Last, Smith contends the court violated due process by sua sponte interposing a hearsay objection to Dr. Tutty's evaluation without providing her an opportunity to respond to that objection and by relying on the judge's own memories of Smith's testimony and demeanor without giving Smith the opportunity to challenge those memories. To say there was no opportunity to respond is inaccurate. Smith could have filed a motion for reconsideration to raise concerns she may have had with any aspect of the court's ruling, including determinations as to the admissibility of evidence and the court's reliance on the judge's memory of the hearing as a basis for evaluating the motion. Smith's claim that the court improperly acted as its own witness is unfounded. She cites authority precluding a judge from *testifying* in a trial over which he or she is presiding. She cites nothing precluding a judge from considering his or her prior observations of a party who claims incompetence at the time of entry of a prior agreed order. See Barrie v. Barrie, 154 N.J. Super. 301, 305, 381 A.2d 374 (Ct. App. Div. 1977), certif. denied, 75 N.J. 601 (1978) (in denying motion to vacate settlement agreement due to party's alleged incompetence at time of settlement, judge properly relied on his observations of party's demeanor, comprehension, and speech when she appeared in proceedings resulting in settlement

13

agreement); cf. State v. Englund, 186 Wn. App. 444, 459, 345 P.3d 859 (in denying motion for self-representation, court properly relied on the judge's own prior observations of the defendant), review denied, 183 Wn.2d 1011 (2015). In addition, any error regarding the admissibility of the evaluation was harmless beyond a reasonable doubt because the court expressly stated that even if the evidence were admissible, it did not meet the high burden of clear, cogent, and convincing evidence that Smith was mentally incompetent.

This opinion supersedes our original opinion filed on April 17, 2017.

Affirmed.

Becker, J.

WE CONCUR:

Mann, J.

Schindler, J.