[No. 43683-0-I.   Division One.   November 22, 1999.]

*In the Matter of the Dependency of* M.S., ET AL.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. ROBERT MATTSON, *Appellant.*

*David Bruce Koch* and *Eric J. Nielsen* of *Nielsen Broman & Associates, P.L.L.C.*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Delores A. Peterson* and *Melissa J. De Groff, Assistants,* for respondent.

*Bradford Kinsey,* as guardian ad litem.

Cox, J. — A parent has a right to a meaningful opportunity to be heard at a hearing to terminate parental rights. But that right is not self-executing. A parent must take reasonable and timely steps to exercise the right to be heard. Here, Robert Mattson failed to timely exercise his right to be heard in the termination hearing. And because balancing of the established due process factors in this case shows that Mattson's parental interests were properly protected, we affirm.

M.S. and B.S are twin sisters born in March 1995. About a year later, they were placed in shelter care because their mother's whereabouts were unknown, and their alleged father, Robert Mattson, was incarcerated in a federal prison in California. Mattson has not seen the twins since June 1995.

The court found the twins dependent as to Mattson in May 1997. In January 1998, the Department of Social and Health Services filed a petition to terminate parental rights. At the October 12, 1998 termination hearing, Mattson was still incarcerated.

At the outset of the termination hearing, Mattson's counsel first advised the court that Mattson wanted to testify by telephone. But insufficient staffing at the prison where Mattson was held prevented the call. When advised of these facts, the court initially indicated it was inclined to

hear the State's case, recess, and then set a new time for Mattson's telephone testimony.

The State put on its case to establish the criteria for termination of Mattson's parental interests. Part of that case included evidence showing Mattson's earliest possible release date would be July 1999. And it was possible that his actual release date would be later. The State's case also included the guardian ad litem's testimony that during his incarceration, Mattson had completed 500 hours of drug rehabilitation, obtained his GED, participated in anger management classes, and was rated very good in his work performance. At the conclusion of the State's case, Mattson's counsel made an offer of proof adopting the guardian ad litem's testimony word for word. Counsel stated:

> By way of offer of proof, I have had a number of conversations with the father as well as with his case manager. For purposes of the offer of proof with regard to the father's position, I would like to adopt the guardian ad litem's testimony.
>
> Almost word for word what the guardian told the Court is what the father has told me on each and every occasion. And, quite simply, he is satisfied that the local home is providing excellent care for his children. It's not even at issue. He is unable to voluntarily give up his parental rights to his children.

In its oral ruling, the court addressed the issue of Mattson's request to testify and stated that:

> Certainly at the beginning of the case, I offered to reserve a ruling or take testimony on another day. I think that there is something ineluctable about what we are looking at. I mean, short of the overthrow of the federal government, I think we can anticipate that Mr. Mattson will be in prison until the earliest, July of 1999 and, perhaps, later.
>
> That's not terribly far in adult life, but it's very far in the lives of these children . . . .

The court then made its findings and conclusions and terminated Mattson's parental rights. It stated that it would accept and consider any declaration or affidavit Matt-

son submitted later. Nothing in the record before us indicates that Mattson submitted anything further to the court.

## Due Process

Mattson's sole argument on appeal is that he was denied his procedural due process rights under the Fourteenth Amendment when the court terminated his parental rights without first giving him the opportunity to testify at trial by telephone, affidavit, or similar device. We disagree.

██ ██ The essential requirements of procedural due process are notice and an opportunity for a hearing appropriate to the nature of the case.[1] It is undisputed that a parent has the right to a meaningful opportunity to be heard at a termination hearing.[2] But there is no right for an incarcerated parent to be present at such a hearing.[3] The proper process to ensure protection of the parent's due process rights depends on the balancing of three factors: (1) the parent's interest, (2) the risk of error created by the procedures, and (3) the State's interest.[4] Applying these three factors here, we hold that the trial court did not abuse its discretion in entering the termination order on this record.

First, the parent's interest in this case refers to Mattson's interest in the care, companionship, and custody of

---

[1]*In re Dependency of C.R.B.*, 62 Wn. App. 608, 614, 814 P.2d 1197 (1991); *In re Welfare of Myricks*, 85 Wn.2d 252, 254, 533 P.2d 841 (1975).

[2]*See* RCW 13.34.090(1) ("[a]ny party has a right to be represented by an attorney in all proceedings [for dependency and termination], to introduce evidence, *to be heard in his or her own behalf*, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact-finder" (emphasis added)); *In re Dependency of J.W.*, 90 Wn. App. 417, 429, 953 P.2d 104, *review denied*, 136 Wn.2d 1021 (1998); *In re Darrow*, 32 Wn. App. 803, 806, 649 P.2d 858, *review denied*, 98 Wn.2d 1008 (1982).

[3]*Darrow*, 32 Wn. App. at 808.

[4]*J.W.*, 90 Wn. App. at 429; *see also Santosky v. Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

his children.[5] That interest is a fundamental liberty interest protected by the Fourteenth Amendment.[6] But it is not absolute and must be balanced against the other factors.

Second, the risk of error created by the procedures used in this case was minimal. We note that Mattson does not challenge on appeal any of the factual findings by the trial court. In fact, he agrees that they accurately reflect the evidence. Moreover, Mattson's counsel examined witnesses and presented other evidence at the hearing. At that hearing, his trial counsel made an offer of proof adopting the testimony of the guardian ad litem as the same that Mattson would give had he testified. Finally, as an additional safeguard, the trial court offered Mattson the opportunity to present his affidavit after the hearing and termination order. He failed to do so. And, as of the time of oral argument on this appeal, counsel was unable to indicate what more Mattson could have said to the trial court that was not already in the record.

As to the third factor, the state has a vital interest in protecting the welfare of children. This includes quickly establishing a stable and permanent home for M.S. and B.S.[7] It is clear here that Mattson was not going to provide that home shortly after the termination hearing because, as of the time of that hearing, he was not scheduled for release for at least another eight months. His actual date of release could have been later. In view of the documented history of failed parental care of these children, the resulting impact on them, and the other statutory criteria that were established at the hearing, the trial court's decision to terminate was proper.

---

[5]*Santosky*, 455 U.S. at 758.

[6]*Santosky*, 455 U.S. at 753.

[7]*See* RCW 13.34.020 ("The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter"); *In re Welfare of Sumey*, 94 Wn.2d 757, 762-63, 621 P.2d 108 (1980) (state has a parens patriae right and responsibility to intervene when parental actions seriously conflict with the physical or mental health of the child).

■ Relying on *Darrow*[8], Mattson argues that his due process rights were violated because he was not permitted to testify prior to entry of the termination order. We reject this contention.

While *Darrow* does establish that an incarcerated parent has a right to be heard, it does not hold that such a right is self-executing. Here, Mattson did not alert the court to the fact that he wished to be heard by telephone until the day of the hearing. A court is not required to hear testimony by telephone. By failing to move earlier than the first day of the hearing to obtain the court's permission to proceed in that manner, Mattson ran the risk that the court would deny the motion.

As it turned out, the trial court was initially inclined to allow such testimony from Mattson when it heard the motion on the first day of the hearing. But for reasons related to prison staffing in California, Mattson ultimately did not testify by telephone. Based on the evidence presented at the hearing and consideration of the rights at issue, the trial court was entitled to conclude, on the record then before the court, that entry of an order of termination was proper.

We note that Mattson failed to submit either an affidavit or a deposition of this testimony during the termination hearing. Perhaps this is because he assumed he would testify by telephone. But for reasons beyond Mattson's control, he did not testify, and there is no record of his submitting his testimony in any form to the court after the hearing.

Citing *State v. Crider*[9] and *State v. Aguilar-Rivera*,[10] Mattson contends he was entitled to present testimony at the hearing, not after. He analogizes his right to the right of allocution provided by statute in the Sentencing Reform Act of 1981 (SRA). We disagree with this contention.

---

[8]*In re Darrow*, 32 Wn. App. 803, 649 P.2d 858, *review denied*, 98 Wn.2d 1008 (1982).

[9]78 Wn. App. 849, 899 P.2d 24 (1995).

[10]83 Wn. App. 199, 920 P.2d 623 (1996).

In *Crider*, the court interpreted RCW 9.94A.110[11] to require sentencing judges to solicit a defendant's statement in allocution prior to imposing sentence. The *Crider* court then held that harmless error analysis does not apply in cases where a sentence is imposed before the right of allocution is given.[12] The court noted that even if the court stands ready and willing to alter the sentence when presented with new information, the opportunity comes too late and the defendant would be arguing from a disadvantaged position.[13] *Aguilar-Rivera* held that when the right of allocution is inadvertently omitted until after the court has orally announced the sentence, the remedy is to send the defendant before a different judge for sentencing.[14]

But the right to allocution provided under the SRA in criminal proceedings has no parallel in parental termination proceedings. The holding in *Crider* rested on RCW 9.94A.110, which explicitly states that the court shall hear from a defendant *before* imposing a sentence. No such explicit pronouncement exists in RCW 13.34.090, which sets forth a party's rights in termination proceedings. Nor has counsel presented to us any case authority that extends the statutory right of allocution in a criminal proceeding to a proceeding to terminate parental rights. And we have found no such authority. Accordingly, we decline to judicially rewrite the legislative enactment before us to provide a right parallel to the right of allocution in criminal proceedings.

We affirm the order.

---

[11]RCW 9.94A.110 states in pertinent part: "*Before* imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. . . . The court shall . . . allow arguments from the . . . offender . . . as to the sentence to be imposed" (emphasis added).

[12]*Crider*, 78 Wn. App. at 861.

[13]*Crider*, 78 Wn. App. at 861.

[14]*Aguilar-Rivera*, 83 Wn. App. at 203.

BAKER and BECKER, JJ., concur.