[Nos. 44595-6-II; 44598-1-II.   Division Two.   April 24, 2014.]

*In the Matter of the Welfare of* L.R. ET AL.

718

*Catherine E. Glinski,* for appellant.

*Robert W. Ferguson, Attorney General,* and *Audra B. Smith, Assistant,* for respondent.

¶1 MAXA, J. — D.R. appeals the trial court's order terminating her parental rights as to two of her children, L.R. and A.H.[1] She argues that the trial court violated her due process rights by proceeding with the first day of the termination trial even though she was not present. We hold that although conducting a termination hearing without the parent present raises due process concerns, the trial court did not violate D.R.'s due process rights under the facts of this case and in light of the procedural safeguards the trial court implemented.

¶2 D.R. also argues that the Department of Social and Health Services (Department) failed to prove that continuation of the parent-child relationship diminished the children's prospects for integration into a stable and permanent home. In the unpublished portion of this opinion, we adopt verbatim the commissioner's recitation of facts and ruling that former RCW 13.34.180(1)(f) (2009) supported the trial court's termination of D.R.'s parental rights. Accordingly, we affirm.

## PROCEDURAL FACTS

¶3 D.R. is the mother of L.R., born in 2010, and A.H., born in 2004. On July 26, 2011, the children were found dependent, and on March 23, 2012, the Department filed

---

[1] Our commissioner considered this appeal on an accelerated basis under RAP 18.13A and affirmed the trial court's termination order. We granted D.R.'s motion to modify the commissioner's ruling in order to address D.R.'s due process argument.

petitions for termination of the parent-child relationship as to both children. The termination trial originally was scheduled for October 17, 2012. However, trial was continued to November 14, then to January 16, 2013, and finally to January 24.

¶4 When the termination trial began at Remann Hall in Tacoma, D.R. was incarcerated at the Washington Corrections Center for Women in Purdy. Because D.R. wanted to attend the trial in person, she moved for an order of transport and a trial continuance so that she could be transported from the corrections center to Remann Hall for the trial. D.R.'s attorney told the trial court that it would take approximately two weeks to arrange for transportation.

¶5 The Department did not object to a short continuance of the termination trial, but stated that it did not want a lengthy delay because the case already had been continued multiple times. The Department also expressed uncertainty as to whether an inmate could be transported to Remann Hall as opposed to the superior court in downtown Tacoma.

¶6 The trial court stated:

> I'm disinclined to grant the continuance. This was set to this time with the idea that it would be tried. The fact that there's now a problem with transport is unfortunate, but really is not anything that, it sounds like, we could even guarantee is going to be accommodated once we got your client transported from wherever she is to the Pierce County Jail. We still have to have her either come out here or we have to find somebody downtown, which is highly unlikely, because we've got cases now that can't get out. We've got a number of offender cases that we're asking them to preassign downtown, so it doesn't sound like there's any good guarantee that we could arrange all the moving parts of this in any quick fashion.

Report of Proceedings (RP) (Jan. 24, 2013) at 8.

¶7 The trial court took a recess to look at its trial schedule. It then denied the motions, stating that there was

no guarantee that D.R.'s transport request could be arranged in a timely manner or even accommodated at all. The trial court continued:

> [T]he transport, the more I think about it, is, I think, a completely problematic event, because even if we get her transported over here, I am absolutely convinced they are not going to transport her out to Remann Hall, and I think it highly unlikely that they would transport her even to one of the courtrooms for trial since this is a civil matter and they have all the criminal matters deemed priority. I think it very, very unlikely that there would be any arrangements made to get her to a trial downtown. And even if we did it downtown, that means we'd have to find a judge available because of their need to hear it in the County-City Building, and that's going to be problematic. So, this trial is doomed to float if we don't get it going now.

RP (Jan. 24, 2013) at 13-14. D.R. does not assign error to the trial court's denial of her motion for a continuance or her motion for transport.

¶8 D.R.'s attorney next attempted to secure D.R.'s presence by telephone. The parties previously had made arrangements with D.R.'s corrections officer to have D.R. available to appear telephonically for trial. But when the State called the corrections officer, she said that she was leaving work that day and gave the State the contact information for a different corrections officer. When D.R.'s counsel attempted to contact that corrections officer, counsel was unable to reach him.

¶9 D.R.'s attorney renewed his objection to commencing trial without D.R.'s presence in person or telephonically. The trial court again denied the request and stated:

> It would be preferable to have her available, preferably, in person, secondarily, on the phone, but these are matters that have been known to the parties throughout the proceeding. This case has been set for enough time to have arranged phone contact, or if there was any hope of in-person presence, that would have been arranged by now also. And as I indicated

earlier, with no indication that those things can be accomplished, if at all, and certainly not any time in the foreseeable future, we are going to proceed.

RP (Jan. 24, 2013) at 16. That day, the trial court heard testimony from a department social worker who was subjected to cross-examination by D.R.'s attorney.

¶10 The trial continued on January 28 and February 7, and D.R. was able to appear telephonically on both days. On January 28, D.R. moved for a mistrial, arguing that the trial court violated her due process rights by denying her the ability to attend the first day of trial telephonically or in person. She argued that her absence curtailed her attorney's effectiveness in cross-examining the social worker. The trial court denied the motion, stating that D.R. had placed herself in the position of not being able to attend because of her criminal behavior. The trial court further reasoned that D.R.'s request for transport was made on the first day of trial and that it was uncertain whether she could be transported to Remann Hall or to any other facility outside of the Department of Corrections.

¶11 After denying D.R.'s mistrial motion, the trial court permitted recesses following each witness's testimony to allow D.R. to speak privately with her attorney. On the last day of trial, the court allowed D.R.'s attorney to recall the social worker to the stand to conduct another cross-examination with D.R. present telephonically. After trial, the trial court entered orders terminating D.R.'s parental rights as to the children.

## ANALYSIS

### Due Process Right to Attend Termination Trial

¶12 D.R. argues that the trial court violated her due process rights by proceeding with the first day of the termination trial without her physical or telephonic presence. We disagree.

### 1. Standard of Review

¶13  D.R. does not assign error to the trial court's denial of her motion to transport or its denial of her motion for a continuance. Instead, she argues only that proceeding with the termination trial in her absence violated her due process rights.

¶14  Division One of this court has suggested that the decision to proceed with a termination trial in the absence of the parent rests in the trial court's sound discretion. *In re Interest of Darrow*, 32 Wn. App. 803, 808-09, 649 P.2d 858 (1982); *see also In re Dependency of J.W.*, 90 Wn. App. 417, 429, 953 P.2d 104 (1998) (citing *Darrow* in context of dependency disposition hearing). However, we review de novo alleged due process violations. *Post v. City of Tacoma*, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009). Accordingly, here we use the de novo standard of review to address D.R.'s due process argument.

### 2. Due Process Balancing Analysis

¶15  Preservation of the family unit is a fundamental constitutional right protected by the Fourteenth Amendment to the United States Constitution. *Darrow*, 32 Wn. App. at 806 (citing *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)). "Because of the constitutional interests at stake in a termination proceeding, parents are afforded greater due process rights than in dependency proceedings or other proceedings to determine the custody or placement of children." *In re Welfare of R.H.*, 176 Wn. App. 419, 425, 309 P.3d 620 (2013). Due process in the termination context requires that parents have notice, an opportunity to be heard and defend, and the right to be represented by counsel. *In re Welfare of S.E.*, 63 Wn. App. 244, 250, 820 P.2d 47 (1991).

¶16  The right to be heard "ordinarily includes the right to be present." *In re Welfare of Houts*, 7 Wn. App. 476, 481, 499 P.2d 1276 (1972). However, there is no absolute

right for an incarcerated parent to personally attend a termination proceeding or to appear telephonically. *In re Dependency of M.S.*, 98 Wn. App. 91, 94-96, 988 P.2d 488 (1999); *see also Darrow*, 32 Wn. App. at 808 ("The right to appear *personally* and defend is not guaranteed by due process so long as the prisoner was afforded an opportunity to defend through counsel and by deposition or similar evidentiary techniques."). For instance, the parent's right to be heard is not self-executing, and he or she must take reasonable and timely steps to exercise that right. RCW 13.34.090; *M.S.*, 98 Wn. App. at 96. But under certain circumstances a parent's due process rights might require his or her attendance. *See S.E.*, 63 Wn. App. at 248-49 (conducting due process analysis but concluding that taking testimony of children outside the presence of their parents did not violate the parents' due process rights).

■ ¶17 In determining whether a parent has received adequate due process, we must balance the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *In re Dependency of C.R.B.*, 62 Wn. App. 608, 614-15, 814 P.2d 1197 (1991). The *Mathews* balancing test requires weighing (1) the parent's interests, (2) the risk of error created by the procedures used, and (3) the State's interests. *C.R.B.*, 62 Wn. App. at 614-15; *see also J.W.*, 90 Wn. App. at 429 (*Mathews* factors used to determine adequacy of procedure in dependency hearing). Here, a balancing of these factors supports the trial court's decision to proceed with the first day of the termination hearing in D.R.'s absence.

a. D.R.'s Interest

■■ ¶18 D.R. has a fundamental liberty interest in the care and custody of her children. *In re Dependency of K.D.S.*, 176 Wn.2d 644, 652, 294 P.3d 695 (2013). " '[C]ourts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children.' " *S.E.*, 63 Wn. App. at 249-50 (alteration in original) (quoting

*In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)). Therefore, "[t]erminating parental rights is one of the severest of state actions and implicates fundamental interests." *In re Welfare of J.M.*, 130 Wn. App. 912, 921, 125 P.3d 245 (2005).

¶19 The Department recognizes the strength of this interest and does not dispute its importance here. However, the right to be present is not absolute and must be balanced against the other two *Mathews* factors. *M.S.*, 98 Wn. App. at 95. In addition, here the infringement on D.R.'s interest involved her inability to attend only the first day of the three-day hearing.

### b. Risk of Error

¶20 The second factor assesses whether the hearing had sufficient procedural safeguards to ensure that the parent had a full and fair opportunity to defend – i.e., to present evidence, rebut opposing evidence, and present legal arguments. *See J.W.*, 90 Wn. App. at 428-29; *S.E.*, 63 Wn. App. at 250-51; *Darrow*, 32 Wn. App. at 808-09. The ability to defend through counsel reduces the risk of error. *See J.W.*, 90 Wn. App. at 428-29.

¶21 The other divisions of this court have indicated that the risk of error is low when the absent parent is represented by counsel and counsel is given a fair opportunity to defend the parent. In *J.W.*, Division One of this court held that conducting a dependency disposition hearing without the father present did not violate due process. 90 Wn. App. at 428-29. The court held that the father's absence created little room for error where no facts were disputed and the father's counsel argued legal issues after fully discussing them beforehand with the father. *J.W.*, 90 Wn. App. at 428-29. In *Darrow*, Division One held that the trial court did not violate the father's due process rights by denying his order of transport to be physically present at a termination trial because the father "was afforded a full opportunity to defend in a fair hearing while represented by counsel." 32 Wn. App. at 809.

¶22 In *S.E.*, Division Three of this court held that the trial court did not violate the parents' due process rights when it excluded them from a termination hearing at which their children testified. 63 Wn. App. at 251. The court held that the risk of error created by the procedure was low because "[a] record of the proceeding was made and counsel and the guardian ad litem were present, had an opportunity to cross-examine the children, did so, and had an opportunity to rebut the children's testimony by other evidence." *S.E.*, 63 Wn. App. at 250.

¶23 As in these cases, there was little risk of error here. D.R. was represented by counsel throughout the termination proceeding and had the opportunity to be heard and defend. D.R.'s attorney was present on the first day of trial to listen to the social worker's testimony and to cross-examine her. On the remaining days of trial, D.R. appeared telephonically and was able to privately consult with her attorney before cross-examining witnesses. On the final day of trial, D.R., who was present telephonically, was given the opportunity to testify and to offer other evidence. In addition, the trial court permitted D.R. to recall the social worker as a witness when D.R. was present telephonically and to cover topics previously addressed. These were sufficient procedural safeguards to ensure that D.R. had a full and fair opportunity to defend despite her absence.

¶24 Further, D.R. does not identify how her telephonic presence on the first day of trial would have resulted in any different or additional evidence relevant to the factual issues resolved by the trial court. D.R. also has not shown how she was prejudiced by her attorney's inability to consult with her on the first day of trial, especially where the social worker was recalled as a witness once D.R. was present telephonically.[2] Accordingly, the risk of error factor does not support a finding of a due process violation.

---

[2] Although lack of prejudice often is part of a harmless error analysis, here it relates to the risk of error prong of the *Mathews* test.

### c. State's Interest

¶25  Regarding the final *Mathews* factor, the Department has a strong interest in protecting the rights of the children, which includes a speedy resolution of the termination proceeding. *M.S.*, 98 Wn. App. at 95. "[T]he State and the child have a strong interest not only in establishing a stable and permanent home for the child, but also in doing it as soon as possible." *C.R.B.*, 62 Wn. App. at 615; *see also* RCW 13.34.020 ("The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.").

¶26  Here, the termination trial already had been continued three times from its originally scheduled date of October 2012. Further, the trial court checked its trial schedule before denying the continuance motion and apparently determined that granting another continuance would cause scheduling problems. The court stated that "this trial is doomed to float if we don't get it going now." RP (Jan. 24, 2013) at 14. Finally, there was no guarantee that D.R. could have been transported to the hearing or even been available by telephone if the trial court allowed a continuance. As such, the Department had a strong interest in proceeding with the hearing on January 24, 2013, rather than allowing any further delay.

### d. Balancing of Factors

¶27  The balancing of the *Mathews* factors demonstrates that D.R.'s absence from the first day of the termination hearing did not violate her due process rights. Although D.R. had a strong interest in attending, her right to be present is not absolute and she missed only one day of a three-day hearing. And the State also had a compelling interest in not delaying the proceedings any further. Most significantly, D.R. was represented by counsel and the procedural safeguards the trial court put into place served to reduce or eliminate any risk of error and any prejudice in

proceeding without her. We hold that the balancing process does not support a finding that D.R.'s due process rights were violated.

¶28 We are aware that D.R. was prevented from attending the first day of the hearing through no fault of her own. We also note the apparent lack of coordination in providing transport for a parent in custody who is facing a termination proceeding. It is troubling that the arrangements that had been made for D.R. to attend via telephone fell through because the corrections officer serving as the contact could not be reached. This lack of cooperation and effort could lead to a due process violation when interests as fundamental as those involved in termination proceedings are at stake. Under these circumstances, the better practice may have been to continue the trial to allow the parent to attend telephonically. However, because the trial court's procedures here minimized the risk of error to the extent described above, we find no due process violation and defer to the trial court's discretion regarding whether a continuance was warranted.

¶29 We hold that the trial court did not violate D.R.'s due process rights by conducting the first day of the termination hearing without her present.

¶30 We consider D.R.'s remaining argument in the unpublished portion of this opinion. We affirm the trial court's termination of D.R.'s parental rights.

¶31 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J., and BJORGEN, J., concur.