IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 35074-6-III |
| | ) | |
| J.L. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, J. — C.C. appeals an order terminating her parental rights to her son, J.L. We affirm.

FACTS

*Initiation of services*

The Department of Social and Health Services received a hospital referral regarding J.L. within days of his birth in April 2015. Rather than take immediate formal action, the Department offered Ms. C. and J.L.'s father 30 days to voluntarily engage in services. The couple evaded the Department and ultimately refused those services. On July 23, 2015, the Department initiated dependency proceedings.[1]

---

[1] J.L.'s father did not respond to the dependency petition. He failed to appear at court hearings and ultimately his parental rights were terminated by default. J.L.'s father is not a party to this appeal.

In September 2015, Ms. C. stipulated to the dependency of J.L. and an agreed disposition order was entered. The order maintained J.L. in foster care and required Ms. C. to follow through on: (1) obtaining a parenting assessment, (2) completing a chemical dependency assessment and any recommended treatment, (3) completing 30 days of random urinalysis testing (UAs) with negative results, (4) obtaining a mental health assessment, and (5) demonstrating the ability to meet J.L.'s physical and psychological needs, as well as maintain a stable drug and alcohol free home. These were the same services Ms. C. agreed to engage in after the dependency was initiated in July 2015.

*J.L.'s health problems*

Approximately one month after his removal by the Department, it was discovered J.L. suffered from significant digestive problems. He was diagnosed with severe gastroparesis, a condition that negatively impacts the stomach muscles and prevents proper emptying of the stomach.

J.L.'s digestive problems impacted his lungs, causing several aspirations, pneumonia, and other upper respiratory illnesses. J.L.'s health problems have resulted in hospitalizations and surgery to insert a feeding tube. With the medical interventions provided by the Department, J.L. has made slow gains in his health. However, he suffers

from severe motor impairment with language and cognitive delays. J.L. still uses a feeding tube and requires constant monitoring while he eats.

J.L. attends weekly therapy sessions to address his medical problems and developmental delays. He also has a host of daily medications. J.L.'s caretakers must be in consistent communication with his medical providers in order to meet J.L.'s basic needs.

*Ms. C.'s progress during the dependency*

Ms. C. failed to engage in most of her court-ordered services. Although Ms. C. obtained chemical dependency and parenting assessments, she never obtained a mental health evaluation. Despite Ms. C.'s chemical dependency assessment recommending services, Ms. C. failed to follow through. Ms. C. denied having a chemical dependency problem. She also failed to appear for 11 of 12 UAs.

In addition to her lack of follow-through regarding services, Ms. C. also failed to demonstrate an ability to provide consistent care for J.L. Ms. C. dropped out of participation in J.L.'s weekly therapy sessions. She missed approximately one-third of her visits with J.L. And Ms. C. was dilatory in providing signed consent for J.L.'s various medical procedures.

*Ms. C.'s participation with legal counsel*

Ms. C. had two different attorneys during the dependency process. Her first attorney was allowed to withdraw based on lack of client contact. Withdrawal was granted after Ms. C.'s initial termination trial date was continued based on the court's congested calendar. Ms. C. was appointed a new attorney, with the proviso that she maintain weekly contact and provide current contact information. Ms. C.'s second attorney was appointed in July 2016, approximately three months prior to the termination trial.

After his appointment, Ms. C.'s second attorney arranged a meeting between Ms. C. and her social worker. The goal was to develop a plan that could help Ms. C. avoid termination of her parental rights. Ms. C. did not follow through with the plan recommended during the meeting.

The termination trial commenced on October 10, 2016. On September 29, Ms. C.'s attorney filed a motion to withdraw and noted it to be heard the morning of trial. The basis for counsel's motion was lack of client contact. It also appeared Ms. C. and her attorney disagreed with the objectives of representation. Ms. C.'s attorney had encouraged Ms. C. to voluntarily relinquish her parental rights and agree to an open adoption. Ms. C. was not amenable to this suggested disposition.

4

Ms. C. initially did not appear in court on the morning of trial.  The court then granted counsel's motion to withdraw.  However, counsel and Ms. C. appeared together after a recess.  Counsel indicated he was willing to continue representing Ms. C., even though Ms. C. had wanted a continuance to hire private counsel.  The court denied Ms. C.'s continuance request and ordered existing counsel to remain as Ms. C.'s appointed attorney.

*Termination trial*

The termination trial began on October 10, 2016.  Toward the end of the first day, the Department announced it would be calling Ms. C. as a witness.  When the court took a brief recess, Ms. C. fled the courthouse.

Trial resumed on October 12.  At that point, Ms. C. was not in the courtroom. Ms. C.'s mother was present and reported Ms. C. was at the hospital with a medical emergency.  Ms. C.'s attorney asked Ms. C.'s mother to return to court that afternoon. Ms. C.'s mother did not.  Counsel did not seek a continuance or recess.  Instead, the trial court heard testimony in Ms. C.'s absence.

Eventually the Department was able to verify Ms. C.'s presence at the hospital. Ms. C. appeared on the third afternoon of trial to testify.  She explained she fled the

courtroom because she had never been to trial before and she felt scared and unprepared. She also said she was at the hospital to receive treatment for a kidney infection.

During her testimony, Ms. C. admitted she was not engaged in services or prepared to meet J.L.'s medical needs. She denied having a drug problem, but did admit to using marijuana. Ms. C. claimed her marijuana use was not a "big deal." 2 Verbatim Report of Proceedings (Oct. 19, 2016) at 369. Ms. C. testified she had made progress by breaking up with J.L.'s father and moving in with her mother approximately one month before trial.

After the close of evidence, the trial court terminated Ms. C.'s parental rights. Ms. C. appeals.

## ANALYSIS

*Findings of fact 12 and 13: testimony regarding parenting assessment*

Ms. C. contends findings of fact 12 and 13 of the trial court's termination order contain misstatements of fact. These two findings pertain to information Ms. C. relayed to the individual performing her parenting assessment. Among other things, finding 12 states Ms. C. reported not obtaining a chemical dependency assessment and finding 13 states Ms. C. reported not having contact with her oldest child. We review the trial court's findings for substantial evidence. *In re Dependency of K.N.J.*, 171 Wn.2d 568,

6

574, 257 P.3d 522 (2011).

Ms. C.'s quibbles over the information relayed during her parenting assessment are only partially accurate. With respect to finding 12, the trial court accurately found that, at the time of the September 2015 parenting assessment, Ms. C. reported she had not engaged in a chemical dependency assessment. Although Ms. C. eventually did obtain an assessment, the chemical dependency assessment did not take place until after the parenting assessment. With respect to finding 13, Ms. C. accurately points out that, according to the testimony, she never reported a lack of contact with her oldest child. Instead, Ms. C. merely reported that her oldest child had been placed with her grandmother. The child with whom Ms. C. had lost contact was a different child, who had been placed with the child's father. During trial, Ms. C. explained she saw her oldest child on a regular basis. This claim was not rebutted by anything in the record.

Although the trial court's findings contained one minor factual error, Ms. C. fails to establish how the error was relevant to the court's ultimate disposition. We find no prejudice.

*Findings of fact 137 and 138: parental unfitness*

To terminate parental rights to a child, the Department must prove by clear, cogent, and convincing evidence that there is little likelihood conditions will be remedied such

that the child can be returned to his or her parent in the near future. RCW 13.34.180(1)(e),

.190(1)(a)(i). If adequate services have been offered or provided and parental deficiencies

are not substantially improved within 12 months of a dependency, a rebuttable

presumption arises that this requirement has been established. RCW 13.34.180(1)(e).

"A parent's unwillingness to avail herself of remedial services within a reasonable period

is highly relevant to a trial court's determination as to whether the State has satisfied

RCW 13.34.180(1)(e)." *In re Welfare of T.B.*, 150 Wn. App. 599, 608, 209 P.3d 497

(2009).

Ample facts justify the trial court's findings as to the dim likelihood of improved

parental conditions, pursuant to RCW 13.34.180(1)(e). Over the course of approximately

15 months, Ms. C. was offered all services reasonably necessary for reunification with

J.L. But Ms. C. did not follow through. Of particular concern was Ms. C.'s failure to

participate in J.L.'s therapy sessions. Ms. C.'s lack of participation rendered her

incapable of meeting her son's most basic needs. According to J.L.'s therapist, it would

take at least six months to a year of weekly participation for Ms. C. to obtain the skills

necessary to feed J.L. in a safe manner. Ms. C. has never shown the ability to maintain

this kind of sustained effort. The trial court was fully justified in finding by clear, cogent,

and convincing evidence that the conditions separating Ms. C. and her son would not be

sufficiently remedied in the near future to allow for reunification.

*Ineffective assistance of counsel*

Washington law guarantees the right to counsel in termination proceedings.

RCW 13.34.090(2); *In re Dependency of Grove*, 127 Wn.2d 221, 232, 897 P.2d 1252

(1995). An ineffective assistance of counsel claim may be raised for the first time on

appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). However, the facts

supporting the claim must be apparent from the existing record. *State v. McFarland*,

127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Our courts have yet to clarify the framework for establishing an ineffective

assistance claim in the current context. *In re Welfare of J.M.*, 130 Wn. App. 912, 922,

125 P.3d 245 (2005). At the very least, a party claiming ineffective assistance must show

deficient performance and prejudice. *In re Dependency of S.M.H.*, 128 Wn. App. 45, 61,

115 P.3d 990 (2005). But even under this generous standard, our scrutiny of counsel's

performance is highly deferential. Only when no reasonable justification can be proffered

for counsel's tactics will we find counsel's conduct ineffective. *Id.*

Ms. C. claims her trial counsel was ineffective for the following reasons:

- Counsel failed to meet with Ms. C., prepare for trial, or introduce exhibits into
  evidence.

9

- Counsel pressured Ms. C. to relinquish her parental rights and agree to an open adoption.

- Counsel did not object to trial exhibits pertaining to Ms. C.'s prior dependencies and criminal history.

- Counsel did not request a continuance or recess when Ms. C. failed to appear during trial.

Ms. C.'s first set of complaints fails for lack of factual support. The record does not suggest Ms. C.'s attorney was to blame for the lack of attorney-client communications and preparation. If anything, Ms. C.'s track record indicates she was the one likely at fault. With respect to the lack of defense exhibits, we do not know what the missing records contain or how they might have helped Ms. C. The appellate record simply contains no proof Ms. C.'s attorney was deficient in his communications with Ms. C. or his performance at trial.

With respect to trial counsel's pressure regarding settlement, we attribute counsel's conduct to legitimate strategy. Given Ms. C.'s lack of follow-through during the dependency, it was reasonable for trial counsel to encourage Ms. C. to explore other options. There is no factual support for Ms. C.'s claim that trial counsel failed to provide any assistance other than recommending settlement.

Finally, Ms. C. fails to show any prejudice from trial counsel's failure to object to evidence or to seek a continuance. The evidence in support of termination was overwhelming. There is no danger the trial court's ultimate decision was improperly swayed by the admission of collateral evidence. *But see J.M.*, 130 Wn. App. 912. Moreover, given the trial court's discretion to proceed with trial in Ms. C.'s absence, s*ee In re Welfare of L.R.*, 180 Wn. App. 717, 324 P.3d 737 (2014), it is not apparent how the outcome of trial would have been different had counsel sought a recess or continuance when Ms. C. failed to appear for court.[2]

In the end, the record indicates Ms. C.'s counsel did the best he could to provide meaningful representation during Ms. C.'s termination trial. Counsel presented an opening statement and cross-examined the Department's witnesses. He elicited favorable information regarding Ms. C.'s love and attentiveness toward J.L. And he assisted Ms. C. with her eventual testimony, along with the testimony of Ms. C.'s mother. The complaints Ms. C. has lodged against her attorney do not rise to the level of ineffective assistance.

---

[2] While counsel did not formally seek a continuance, he did urge the court to hold the record open so Ms. C. and her mother would have the opportunity to testify.

No. 35074-6-III
*In re Parental Rights to J.L.*

CONCLUSION

The order terminating parental rights is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.