IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 81795-7-I |
| J.D.E.C., d.o.b. 10/29/15, | ) | consolidated with |
| J.C., d.o.b. 10/16/17, | ) | No. 81796-5-I |
| | ) | |
| Minor Children. | ) | |
| | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF CHILDREN,YOUTH, & FAMILIES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVE GOHEEN-RENGO, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A parent facing termination of their parental rights must have a meaningful opportunity to be heard, including the ability to meaningfully assist counsel. Consistent with emergency orders issued by the Washington Supreme Court during the COVID-19 pandemic, Skagit County Superior Court adopted procedures to allow termination trials to be conducted remotely by videoconference and teleconference. Because the record shows those procedures did not deprive Cleve Goheen-Rengo of a meaningful opportunity to be heard, he fails to establish a violation of his due process rights.

Therefore, we affirm.

## FACTS

J.D.E.C. (hereinafter, "John") and J.C. (hereinafter, "Jane") were found to be dependent on April 21, 2017, and on January 3, 2019, respectively.[1]  The State petitioned to terminate their biological father's, Cleve Goheen-Rengo's, parental rights as to John in December of 2017 and petitioned to terminate his rights as to Jane in September of 2019.[2]  By the time of trial in July of 2020, the children had not been in Goheen-Rengo's custody for more than two-and-a-half years.

A bench trial was held in Skagit County Superior Court.  At that time, the COVID-19 pandemic had forced trial procedures to change, and courts statewide were operating under emergency administrative orders.[3]  Pursuant to those orders, bench trials in Skagit County were to be conducted remotely by video conference or telephonically.[4]  The court used the Zoom videoconference platform for remote trials.  Members of the public could attend trial in person so long as they complied with masking and physical distancing requirements.  The court created specific protocols for remote trials, and those protocols applied equally to

---

[1] "John" and "Jane" are pseudonyms used for ease of reference.

[2] Their mother voluntarily relinquished her rights to both children.

[3] Order No. 25700-B-622, In re Statewide Response By Washington State Courts to the COVID-19 Public Health Emergency (Wash. Apr. 30, 2020), www.courts.wa.gov/content/PublicUpload/Supreme%20Court%20Orders/Supreme%20Court%20Order%20Dependency%20Termination%20Cases.pdf.

[4] Admin. Order No. 20-8, In re Emergency Response to COVID-19 Outbreak, at 3-4 (Skagit County Super. Ct., Wash. June 16, 2020), www.skagitcounty.net/SuperiorCourt/Documents/Superior%20Court%20Emergency%20Order%2020-8.pdf.

all parties.[5]  Among other requirements, a party or attorney wishing to speak privately with the other was required to inform the court so it could create a private, virtual breakout room from the video conference.[6]

Goheen-Rengo participated telephonically because he was unable to access Zoom.  Goheen-Rengo's attorney, the State's attorney, most witnesses, and the court participated by videoconference.  Following a two-day trial, the court found Goheen-Rengo was an unfit parent and terminated his rights to both children.

Goheen-Rengo appeals.

ANALYSIS

Goheen-Rengo argues his procedural due process rights were violated because the trial was conducted by video conference, placing "severe limitations on [his] ability to participate."[7]  We review alleged due process violations de novo.[8]

---

[5] Remote Bench Trial Protocol and Procedures 1 (Skagit County Super. Ct., Wash. May 2021), www.skagitcounty.net/SuperiorCourt/Documents/Bench%20 Trial%20Protocols.pdf.

[6] Id. at 3.  "Breakout rooms" are "split off from the main Zoom meeting" and are "completely isolated in terms of audio and video."  Participating in Breakout Rooms, ZOOM HELP CTR. (Mar. 25, 2021), http://support.zoom.us/hc/en-us/articles/115005769646-Participating-in-Breakout-Rooms#:~:text= Breakout%20rooms%20are%20sessions%20that%20are%20split%20off,used%20 for%20collaboration%20and%20discussion%20of%20the%20meeting.

[7] Appellant's Br. at 9.

[8] Matter of Welfare of M.B., 195 Wn.2d 859, 867, 467 P.3d 969 (2020) (citing In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015)).

A parent's procedural due process rights protect their "fundamental liberty interest in the care and custody of their children."[9]  These protections include the right to assistance of counsel, a meaningful opportunity to be heard, the opportunity to hear the State's presentation of evidence, and the opportunity to consult with counsel about the State's presentation.[10]  The right to be heard "'ordinarily includes the right to be present,'"[11] but if a parent is unable to be physically present, then "they must be given a meaningful opportunity to be heard and defend through alternative procedures."[12]  If alternative procedures must be used, then the parent "must take reasonable and timely steps to exercise" their right to be heard.[13]

We apply the Mathews v. Eldridge[14] balancing test to determine if a parent's due process rights were violated at a termination trial.[15]  We balance (1) the private interests affected, (2) the State's interest in using the challenged procedures, and (3) the risk of erroneous deprivation of the private interests due to

---

[9] Id. (citing Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (plurality op.)).

[10] Id. at 868, 874.

[11] In re Welfare of L.R., 180 Wn. App. 717, 723, 324 P.3d 737 (2014) (quoting In re Welfare of Houts, 7 Wn. App. 476, 481, 499 P.2d 1276 (1972)).

[12] Welfare of M.B., 195 Wn.2d at 868.

[13] Welfare of L.R., 180 Wn. App. at 724 (citing RCW 13.34.090; In re Dependency of M.S., 98 Wn. App. 91, 96, 988 P.2d 488 (1999)).

[14] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[15] Matter of Welfare of D.E., 196 Wn.2d 92, 102, 469 P.3d 1163 (2020) (citing Santosky, 455 U.S. at 754).

the procedures used.[16]  A due process violation occurred when "there was an intolerable risk of error at the proceedings given the private interests at stake."[17]

In Matter of Welfare of M.B., the court concluded an incarcerated father's due process rights were violated by the trial court's management of a termination trial.[18]  The father's attorney had attempted to arrange for the father to participate telephonically, but prison staff refused to cooperate.[19]  The morning of trial, the court issued a transport order requiring transportation within five days, and it entered a six-day continuance.[20]  The prison failed to transport the father by the time of trial.[21]  To avoid a lengthy delay, given the multiple witnesses and their busy schedules, the court began trial and delayed the testimony of "the primary witnesses—the social worker and the guardian ad litem (GAL)—until [the father] was present."[22]  The father's attorney did not object, and the court began hearing testimony.[23]

The following week, the primary witnesses and others were set to testify, but the prison would not transport the father for at least another week.[24]  To maintain its schedule and ensure the children's rights were respected, the court

---

[16] Id. (citing Mathews, 424 U.S. at 335).

[17] Welfare of M.B., 195 Wn.2d at 877.

[18] 195 Wn.2d 859, 878, 467 P.3d 969 (2020).

[19] Id. at 865.

[20] Id.

[21] Id.

[22] Id.

[23] Id.

[24] Id.

decided to take testimony from the father telephonically and to hear testimony without the father present.[25] Several critical witnesses, including the social worker and a psychologist, testified about the father's fitness to parent and were cross-examined without the father present at all.[26] When the father appeared telephonically, he was also able to hear some of the cross-examination of the social worker and testimony from the GAL, but he had no opportunity to speak with his attorney during the proceedings that day.[27]

The court concluded the father's "inability to testify in person and to aid his counsel . . . created a significant risk of erroneous termination."[28] The prison prevented the father from physically attending trial, which deprived the court of the ability to evaluate his credibility akin to the other witnesses.[29] The father was also prevented from hearing the testimony of six witnesses, including the social worker's critical testimony during the State's case-in-chief.[30] And even after hearing some limited testimony, he had no opportunity to consult with his attorney before or after cross-examination.[31] Because these severe limitations deprived the father of a meaningful opportunity to evaluate the State's case or aid his

---

[25] Id.

[26] Id. at 865-66.

[27] Id.

[28] Id. at 869.

[29] Id. at 871.

[30] Id. at 872.

[31] Id.

attorney, thus creating a risk to his fundamental right to parent, the court reversed.[32]

Here, the parties agree that Goheen-Rengo "has a significant private interest" in the care and custody of his children.[33] John and Jane also have interests at stake, including a shared interest with Goheen-Rengo in achieving an accurate outcome.[34] The children also have interests "in being free from unreasonable risks of harm and a right to reasonable safety; in maintaining the integrity of the family relationships . . . ; and in not being returned to (or placed into) an abusive environment over which they have little voice or control."[35]

The State has similar interests in the children's welfare.[36] It also has interests in quickly resolving parental termination cases to keep the children in its custody from "'legal limbo[,]' suffer[ing] much 'mental and emotional strain'" from the uncertainly.[37] Due to COVID-19, Skagit County Superior Court suspended all termination trials as of March 23, 2020,[38] and resumed them remotely on June

---

[32] Id. at 877-78.

[33] Resp't's Br. at 20-21 (citing Welfare of L.R., 180 Wn. App. at 724); Appellant's Br. at 8.

[34] Welfare of M.B., 195 Wn.2d at 869 (citing Santosky, 455 U.S. at 760).

[35] In re Dependency of M.S.R., 174 Wn.2d 1, 20, 271 P.3d 234 (2012); see RCW 13.34.020 (children have private interests in "a safe, stable, and permanent home and a speedy resolution of any proceeding").

[36] Id.

[37] Welfare of M.B., 195 Wn.2d at 876-77 (quoting In re Dependency of M.H.P., 184 Wn.2d 741, 762, 364 P.3d 94 (2015)); see Welfare of L.R., 180 Wn. App. at 727 (State's interests include "a speedy resolution of the termination proceeding").

[38] Admin. Order No. 20-3, In re Emergency Response to COVID-19 Outbreak, at 2 (Skagit County Super. Ct., Wash. Mar. 23, 2020),

22.[39] Thus, the State was relying on videoconference and teleconference procedures to ensure termination trials could occur without further substantial delay and without risking exposure of the trial participants to a deadly disease.

Goheen-Rengo contends his interest in the care and custody of his children was placed at risk because "(1) he was not able to testify or communicate with the court in the same manner as the State's witnesses, namely by video, (2) he was unable to meaningfully review and challenge the State's evidence, and (3) he lacked the same level of access to his attorney as the other parties."[40] None of his contentions are supported by the record.

First, Goheen-Rengo relies upon Matter of Welfare of M.B. for the proposition that he was entitled to testify by the same means as the State's witnesses. M.B. does not mandate that every witness present their testimony through identical means. Rather, M.B. requires that a parent unable to attend a termination trial in person "be given a meaningful opportunity to be heard and defend through alternative procedures."[41]

---

https://www.skagitcounty.net/SuperiorCourt/Documents/Emergency%20Order%20No%2020-3.pdf.

[39] Admin. Order No. 20-8, at 3.

[40] Appellant's Br. at 9. Notably, Goheen-Rengo moved to continue the trial until the conclusion of the COVID-19 pandemic so his trial could be conducted in person. He believed this continuance was appropriate even if he could have accessed Zoom. The court denied his motion, and Goheen-Rengo does not challenge that decision.

[41] 195 Wn.2d at 868.

The court's procedures let Goheen-Rengo participate either by appearing in person, which Goheen-Rengo said he could do but never did,[42] or by appearing telephonically, which he did. Goheen-Rengo was afforded the opportunity to have the judge evaluate his credibility in person, but he chose not to take it.[43] For the means Goheen-Rengo chose, he used his telephonic appearance to participate actively in the trial, hear the State's evidence, and meaningfully communicate with his counsel.

Goheen-Rengo actively engaged in the trial. He directed his attorney to move for the judge to recuse himself. He consulted with his attorney both before and after witnesses testified to provide additional information and to help direct cross-examination. He directed which witnesses would be called to testify on his behalf. After deciding to testify on his own behalf, Goheen-Rengo directed which questions defense counsel was supposed to ask him.

He was able to participate so actively because he could coordinate with his counsel through the use of private breakout rooms. Seven times, Goheen-Rengo requested that the court create a breakout room, and the court did so six of those seven times. The one time the court declined came at the end of the day when Goheen-Rengo and defense counsel could speak on the phone after the court recessed. The court also created breakout rooms for Goheen-Rengo and his

---

[42] It also appears that he had the opportunity to participate by video from his attorney's office.

[43] To the extent Goheen-Rengo now argues the State should have provided a reliable computer and internet connection to access Zoom, the record does not show he requested it. See Welfare of L.R., 180 Wn. App. at 724 (a parent wishing to utilize alternative procedures must take steps to do so).

counsel to consult each other during recesses. It was clear that Goheen-Rengo and defense counsel could speak with each other without a breakout room. For example, defense counsel called Goheen-Rengo twice when he had failed to call into the proceeding. Contrary to Goheen-Rengo's argument, he actively reviewed and challenged the State's case and consulted closely with his attorney to do so.

The portions of the trial Goheen-Rengo missed were due to his own actions. On the first full day of proceedings, the court granted a 15-minute morning recess, but Goheen-Rengo failed to return until 1:30, explaining "he misheard when court was resuming."[44] He missed testimony from two social workers, one who managed his case from December of 2014 until September of 2016 and a few minutes of testimony from another one. He declined to participate the day the court made its ruling granting termination. During both voluntary absences, his counsel actively participated. Nothing suggests the remote trial format contributed to either absence.

Six times during the two-day trial, the court briefly muted Goheen-Rengo and prevented him from speaking. Each time it did, the court was responding to Goheen-Rengo's own interruptions and inappropriate behavior, including calling one witness a "moron" and interrupting the GAL's testimony to argue with her. But unlike removal from the courtroom, Goheen-Rengo was not prevented from hearing the State's case or from consulting with his attorney after being unmuted.

---

[44] Appellant's. Br. at 11. The record reflects that the trial court expressly told the parties it was granting a 15-minute recess.

Nothing suggests the court's exercise of its considerable discretion to manage the courtroom violated Goheen-Rengo's due process rights.[45]

Unlike Welfare of M.B., Goheen-Rengo participated actively in trial and routinely assisted his counsel. In Welfare of M.B., the incarcerated father was prevented from hearing nearly all of the testimony about his fitness to parent due to the prison's actions. The small portions of trial Goheen-Rengo missed were due to his own actions. The court here weighed the Mathews factors at the outset of trial, and the procedures used did not deprive Goheen-Rengo of a meaningful opportunity to be heard. Because there was little risk to Goheen-Rengo's interest from the procedures used and strong interests for both the State and the children in holding a trial without risking the spread of COVID-19, Goheen-Rengo fails to show his due process rights were violated.

Therefore, we affirm.

_____

WE CONCUR:

_____

_____
Andrus, A.C.J.

---

[45] See In re Marriage of Zigler and Sidwell, 154 Wn. App. 803, 815, 226 P.3d 202 (2010) ("Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially.") (citing State v. Johnson, 77 Wn.2d 423, 426, 462 P.2d 933 (1969)).