IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parental Rights of:<br><br>A.R. | No. 85483-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — A.R. was removed from the care of her parents shortly after birth. She has had no contact with her father, E.R., since then. In September 2022, the Department of Social and Health Services (the Department) petitioned to terminate E.R.'s parental rights. The Department's multiple attempts to serve E.R. personally by process server and then by certified mail were unsuccessful. Following these attempts at service, the court granted the Department's request to serve E.R. by publication. E.R.'s counsel appeared at the termination trial but E.R. did not, despite further attempts to reach him. At the conclusion of the trial, the court terminated E.R.'s parental rights. E.R. appeals, asserting that he never received proper notice of the termination petition. We disagree and affirm.

FACTS

Shortly after A.R. was born, she was removed from her parents' care due to substance abuse by both parents. A.R. has had no contact with her father, E.R., since she was discharged from the hospital after birth. In January 2019, the court established dependency as to E.R by default. The dependency order placed A.R. in licensed foster care pending the investigation of relative

placement options. She was later placed with her maternal aunt, who had already adopted her half-brother.

Jamie Driscoll, the social worker assigned to A.R.'s dependency case, attempted to stay in contact with E.R. through the course of the dependency proceedings but received little to no response. E.R. rarely responded to Driscoll's attempts to communicate, nor did he complete any of the offered services.

In September 2022, the Department filed a petition to terminate E.R.'s parental rights to A.R. The Department noted E.R.'s lack of contact with A.R., the fact that he did not know about her needs or how to care for her, and the lack of any improvement in his longstanding parenting deficiencies despite years of offered services.

Between September and October 2020, the Department attempted to personally serve E.R. with the petition seven times at the address listed for him in the State Enforcement Management System (SEMS) – Division of Child Support records. Each attempt was unsuccessful. The process server reached E.R. by phone on one attempt and E.R. provided a time frame during which he would be home. E.R. did not return home during that window. At no point did E.R. deny living at his listed address.

The Department next attempted to serve E.R. notice of the petition by certified mail, using the same address. E.R. received notice of the attempt to deliver the mail but failed to pick up the certified mail packet. The postal service returned the certified mail packet as undeliverable.

Given the extent of the unsuccessful attempts to serve E.R. personally or by mail, the Department sought court authorization to serve notice by publication. The court granted the Department's request based on various declarations detailing the numerous attempts to serve and to locate E.R. and notify him of the petition. This included documentation of searches of Department databases and the "jail registry." Following the court order, the Department published a notice and summons in the Seattle Daily Journal of Commercial Commerce.

E.R.'s attorney, Dennice Bryant, appeared at the May 2023 dependency trial following the service by publication. The court paged E.R. in the courtroom and over Zoom but he did not respond. Bryant moved to withdraw based on E.R.'s absence but the court denied the motion, noting that it did not want E.R. to be entirely unrepresented.

The trial court heard testimony from Driscoll and the court appointed special advocate (CASA) on the merits of the Department's petition. Bryant cross-examined both witnesses. Relying on Driscoll and the CASA's testimony, the trial court terminated E.R.'s parental rights to A.R. The court determined that E.R. had not answered the petition after service by publication and deemed the allegations in the petition admitted. The court also explicitly found that the testimony and evidence supported findings necessary for the termination of E.R.'s parental rights under RCW 13.34.180(1) and RCW 13.34.190(1) and (2).

E.R. appeals the termination of his parental rights, asserting only that he did not receive legal notice of the Department's termination petition.

ANALYSIS

Standard of Review

We review alleged due process violations and sufficiency of service of process claims de novo. In re Welfare of L.R., 180 Wn. App. 717, 723, 324 P.3d 737 (2014); In re Dependency of G.M.W., 24 Wn. App. 2d 96, 114, 519 P.3d 272 (2022), review denied, 1 Wn.3d 1005 (2023).

Notice

E.R. asserts that the Department did not properly notify him of the termination proceedings because he did not receive personal service. The Department contends that service by publication comported both with E.R.'s due process rights and the dependency statute. We agree with the Department.

"Parental termination proceedings are accorded strict due process protections." In re Interest of Darrow, 32 Wn. App. 803, 806, 649 P.2d 858 (1982). Strict due process requires notice that is " 'reasonably calculated, under all the circumstances,' to apprise the parties of the pendency of the action and enable them to present a defense." In re Welfare of H.S., 94 Wn. App. 511, 525, 973 P.2d 474 (1999) (quoting Duskin v. Carlson, 136 Wn.2d 550, 557, 965 P.2d 611 (1998)). Default termination may proceed once proper notice is given. In re Welfare of S.I., 184 Wn. App. 531, 543, 337 P.3d 1114 (2014).

A party to a termination proceeding must be personally served if personal service is possible. RCW 13.34.070(8). If the party cannot be personally served, but their address is known or can be determined with reasonable diligence, the party may be served by certified mail. RCW 13.34.070(8). And if neither

personal service nor service by certified mail is possible, the court may authorize service by publication. RCW 13.34.080(1), (2).

Personal service may be accomplished by delivering a copy of the summons to the party personally or leaving a copy at the party's place of "usual abode" with a person of "suitable age and discretion" who similarly lives in the home. RCW 4.28.080(16). Although a party may have more than one place of abode, service need only be attempted at the residence most likely to ensure that party received actual notice of the proceedings. In re Dependency of G.M.W., 24 Wn. App. 2d 96, 119, 519 P.3d 272 (2022), review denied, 1 Wn.3d 1005 (2023).

When personal service has been unsuccessful, a court may allow notice by publication to parents who cannot be located:

> The court shall direct the clerk to publish notice in a legal newspaper printed in the county, qualified to publish summons
>
> . . . .
>
> [and] [t]he publication of notice shall be deemed equivalent to personal service upon all persons, known or unknown, who have been designated as provided in this section.

RCW 13.34.080.

E.R. contends that the Department inadequately attempted personal service because other possible addresses appeared in the record and the Department did not attempt personal service at those locations. He then argues that because personal service was not properly attempted, any substitute service by mail of or publication was impermissible. We disagree.

To begin, the Department attempted personal service at E.R.'s listed address seven times without success. In fact, E.R. actively evaded the process

5

server even after having personal contact with them and verifying a time that E.R. would be home. When the Department eventually attempted service by mail, E.R. then failed to pick up the certified mail packet. E.R. at no point stated that he lived elsewhere. And no evidence in the record indicates that E.R. actually did live elsewhere.

E.R.'s contention that he lived with M.W., A.R.'s mother, dates back to 2018, four years before the Department filed the termination petition. And that contention is based solely on two mentions in Driscoll's testimony that E.R. visited A.R. in the hospital after she was born – "showing that [M.W. and E.R.] remained together." The presumption that E.R. and M.W. were still together at A.R.'s birth is not enough to establish M.W.'s home as E.R.'s usual place of abode at the time service of the petition was attempted four years later. And the Department was not legally required to attempt to service E.R. at additional addresses, not known to be his, before seeking a court order authorizing service by publication.

Moreover, E.R. cannot establish that service at M.W.'s home would have been more likely to ensure that he received actual notice. The same process server attempted service for both E.R. and M.W. and noted that no one was available to be served at M.W.'s home either.

Because the Department diligently attempted, and was unsuccessful, with both personal service and service by mail, it appropriately requested substitute

6

service.[1]

Lastly, the court granted the Department's request for notice by publication and the Department met all of the necessary requirements when publishing notice: E.R.'s full name was provided, along with the termination cause number, the name of the court, the date, time, and location of the hearing, and the number a party could call to learn more or to participate in the hearing by phone. The notice was published in the Seattle Daily Journal of Commerce three times in three consecutive weeks.

Given the evidence of the Department's diligent attempts at personal service and service by certified mail at E.R.'s usual place of abode before requesting service by publication, the court acted appropriately in granting the request to allow service by publication. Thereafter the notice was appropriately published, resulting in E.R. having been properly served. No due process violation exists.

We affirm.

_Smith, C.J._

WE CONCUR:

_Colburn, J._      _Mann, J._

---

[1] It is also worth noting that E.R.'s attorney, Bryant, informed the court that she was "aware of [E.R.'s] interest to seek further review if he did not prevail at trial," clearly indicating that E.R. knew termination was pending and a trial had been set.